In the Matter of the Accounting of GERTRUDE FINCH, as Administratrix of the Estate of ELLA MULDERIG, Deceased.

Surrogate's Court, Broome County, October 1, 1949.

*John R. Normile* for administratrix.

*Edward F. Ronan* and *Harold S. Taylor* for Madalyn A. Mulderig, claimant.

PAGE, S. During the course of administration of the estate, a claim was presented by Madalyn A. Mulderig in the sum of $572 for alleged services as a practical nurse rendered to the decedent from November 27, 1939, to May 11, 1940. This claim, having been rejected by the administratrix, was tried on the claimant's part, followed by a motion by counsel for the administratrix for its dismissal on the ground of inadequacy of evidence in its support. The question to be determined is, therefore, tantamount to whether the evidence adduced by claimant is sufficient to withstand a motion for a nonsuit.

Included in the evidence presented was a record kept by claimant from day to day during the course of the services rendered. The proposed foundation for its offer in evidence was the testimony of claimant herself only. In respect to this evidence, it was contended that it is admissible pursuant to provisions of section 374-a of the Civil Practice Act (citing *Mantha Co.* v. *DeGraff*, 242 App. Div. 666, affd. 266 N. Y. 581). The case cited is not in point because that was an instance of books having been kept by a stockholder of a corporation which was asserting a claim against a decedent's estate. It was held that his being a stockholder of the claimant did not disqualify the witness. But, in the present instance, if the record kept by claimant were to be regarded as admissible under section 374-a of the Civil Practice Act, it would, in effect, be precisely the same as if she had kept no record but were permitted to testify in the face of objections under section 347 of the Civil Practice Act. (*Matter of DeSimone*, 151 Misc. 87.) (But this case is not " on all fours ". Section 374-a was inapplicable. It involved the " shop

book rule '' only.) *Eby* v. *Grieves* (153 Misc. 428) is a case which holds that section 347 of the Civil Practice Act controls or limits section 374-a of the Civil Practice Act, when a record within the scope of the latter section, kept by a person who would be disqualified in respect to a transaction with a person since deceased, is offered in evidence. The motion to strike out the record of services kept by claimant is granted.

Since here the alleged account book of claimant was not offered to be substantiated by any witness not disqualified under section 347 of the Civil Practice Act, we do not need to determine whether section 374-a would validate such a record, that is one kept by a person subject to the disqualification prescribed by section 347 if it were capable of being established by a qualified witness or witnesses.

The further necessary examination of the situation presented requires us to consider whether the evidence dehors the account book is sufficient to sustain the claim to the extent requisite to withstand a motion for a nonsuit.

The following facts are sufficiently established. During the period of time in question, the decedent lived at a house in the city of Binghamton on Cherry Street, the street number of which is not disclosed, but it was close to No. 247 Court Street. During at least a portion of this time, deceased was so seriously incapacitated that she required the services of a practical nurse. The claimant, a practical nurse, came to decedent's residence regularly every day, except holidays, and took care of her housekeeping, preparing her food, seeing that the doctor's directions were followed and otherwise serving her. There also was testimony to the effect that the decedent expressed her expectation of compensating the claimant, thus negativing any inference that she presumed or understood that claimant's services to her were being rendered gratis.

The testimony in support of these findings is not contradicted, nor any reason to doubt its credibility shown. Alice Knoll, a witness for claimant, testified that she was fourteen years old in 1939 and living at No. 247 Court Street, Binghamton, New York, in full view of decedent's residence and only two or three doors therefrom; that from the latter part of November, 1939, until sometime in May, 1940, the witness saw Madalyn A. Mulderig every school day, when she brought her daughter to the house where witness lived about eight o'clock each morning; that the witness and the claimant's daughter went to school together; that, on all these occasions, the witness observed the claimant

walking into or toward the residence of decedent. Upon returning from school, the witness and the other girl frequently went to the home of decedent and observed that Madalyn A. Mulderig was there waiting upon decedent, doing things for her which are ordinarily done by a practical nurse and housekeeper. This witness testified that Madalyn A. Mulderig generally left the home of decedent around 5:30 or 6:00 P.M. On Saturdays, the witness went to the home of decedent to be with the daughter of claimant who was there with her mother on days when school was not in session. This testimony was corroborated by testimony of Alice G. Murray, grandmother of the first witness. In 1939 and 1940, her home was at 247 Court Street. Her testimony is the same as that of her granddaughter to the effect that claimant came to her house each schoolday morning and then proceeded to the home of decedent and that she had observed that she remained there until late in the afternoon. This line of testimony is further corroborated by Dr. Clifton Berlinghof, who was the attending physician of decedent during the period of time in question. He had no record of the number of times but there were occasions when he saw the claimant at the home of decedent taking care of her as a practical nurse. The doctor's testimony also is to the effect that the decedent, because of her physical ailments, required the care of a practical nurse, at least during the latter part of this period. It was indicated by his testimony that she did not especially need such services during the first one-half or more of the time in question. Additional credible testimony shows that the decedent made statements during this time to the effect that Madalyn was a fine housekeeper, taking good care of her and she expected to pay her for her services. In this connection, the rate of $4 a day is stated to have been mentioned by deceased.

However, the evidence is insufficient to show the existence of any express contract. The theory of claimant is an implied contract. On this basis, the amount payable to her, if any, would be a *quantum meruit*.

Where the evidence presented by the party in the position of a plaintiff establishes a prima facie case, on motion at the close of plaintiff's evidence, it would be error to dismiss his complaint. The credibility of the plaintiff's evidence and every reasonable inference based thereon is presumed. (*Rabinowitz* v. *Solomon,* 221 App. Div. 366; *Cohen* v. *Consolidated Gas Co.,* 137 App. Div. 213, affd. 202 N. Y. 578; *Dzkowski* v. *Reynoldsville Carting Co.,* 216 N. Y. 173; *Faber* v. *City of New York,* 213 N. Y. 411.)

Particularly, in Surrogates' Courts, where the operation of section 347 of the Civil Practice Act is most frequently encountered, the bearer of the burden of proof is entitled to all justifiable inferences favorable to him. It would be unreasonable to require the claimant in the present case to prove by witnesses that she was actually there each and every day and hour covered by the claim and full details as to all she did. The evidence is ample to support the inference that she was regularly there, rendering personal services to decedent which were in accordance with the latter's needs and wishes.

In cases of this species generally, the primary, at least tentative, presumption is that the rendition of services gives rise to an obligation on the part of the person for whom the services were rendered to pay the reasonable value thereof. (*Matter of Mason,* 134 Misc. 902, 904, and *Matter of Hughes,* 229 App. Div. 614, 615, both cite the leading case of *Moore* v. *Moore,* 3 Abb. Ct. App. 303.) In cases where a specific contract cannot be shown, either because of the application of section 347 of the Civil Practice Act or otherwise, the compensation payable is the reasonable value of the services. Thus it becomes immaterial whether or not there was an express agreement to pay the reasonable value of the services since the law will imply such an agreement.

But it is contended in the present case that such implication is unwarranted because of ▮ the relationship (daughter-in-law and mother-in-law) between the claimant and the decedent, and ▮ the laches of claimant in asserting her claim.

The circumstances as to relationship frequently negate the above-mentioned tentative presumption. These circumstances, such as, for example, in the case of child and parent, may be such as to indicate that it would be unreasonable or perhaps absurd to infer that there ever had been an implied contract in relation to help of some kind extended by one person to another between whom there was a close bond of kinship. Also, such circumstances would be of a more cogent application in a case where the parties had lived together in the same household and the rendition of services would be more readily ascribable to courtesy and consideration in line with natural experience in these things among members of the same family or persons of close relationship. This is not so much applicable to an "in-law" relationship and becomes even less so in the present instance because of the fact of regular hours served at the residence of decedent which was not in common with that of the claimant. For purposes of the present motion, the equitable consideration of laches

alone, as distinguished from a claim outlawed by a Statute of Limitation, is not enough to nullify the claim.

For the reasons above stated, the motion to strike out the claimant's evidence insofar as the same consists of her own personally kept records is granted, but, the motion to dismiss the claim on the merits is denied.

Denial of the motion does not signify the allowance of the claim in full. Even though no further evidence may be adduced, the determination of reasonable value, in view of testimony on that subject and variations in the situation of the decedent during the term in question, as affecting the amount allowable, would be determined on settlement of the final decree herein.

Order may be entered accordingly, or, if the administratrix elects to adduce evidence in contravention of that of claimant, the dispositions of motions above indicated may be noted on the minutes.