■ Gerard M. Marlio, Appellant-Respondent, v James J. McLaughlin, Respondent-Appellant. [734 NYS2d 4] —Judgment, Supreme Court, New York County (Thomas Keegan, J.), entered July 20, 2000, which awarded plaintiff a total sum of $407,087.12 for breach of an alleged oral contract, unanimously reversed, on the law, without costs, the judgment vacated and

the complaint dismissed. The Clerk is directed to enter judgment in favor of defendant dismissing the complaint. Appeal from order, same court and Justice, entered June 12, 2000, which, insofar as appealed from denied plaintiff's cross motion for an order setting aside the damage award and granting a new trial on the issue of damages, unanimously dismissed, without costs, as academic in view of the foregoing.

Plaintiff's action is predicated on the breach of an oral contract to purchase his interest in a Netherlands Antilles banking company for a sum equal to three times his initial investment. Plaintiff's claim is predicated upon a conversation with a decedent, John Aldrich, who is alleged to have acted as defendant's agent and to have extended defendant's offer to purchase plaintiff's shares in the corporation on December 16, 1991. John Aldrich, together with his brother Frank, were fellow shareholders in the banking corporation.

Supreme Court properly precluded any testimony by plaintiff with regard to the substance of his conversation with the decedent (CPLR 4519). However, at the commencement of trial, plaintiff introduced a memorandum purporting to set forth the substance of that meeting. Because the memorandum was admitted on consent, the court never issued a ruling with respect to whether it came within any applicable exception to CPLR 4519, New York's codification of the Dead Man's Statute (*cf.*, *Matter of Mulderig*, 196 Misc 527 [interested party, subject to disqualification, cannot provide foundation for admission of own record of nursing services rendered to decedent] and *Trotti v Estate of Buchanan*, 272 AD2d 660 [co-owners of grocery store could authenticate charge slips and ledger papers kept in the ordinary course of business]).

The major point of contention at trial was the application and interpretation of Netherlands Antilles law with regard to the timeliness of plaintiff's acceptance of the purported offer from defendant, a fellow shareholder. However, the record is devoid of any acknowledgment by defendant that any offer to purchase plaintiff's shares was ever made. The only proof of such an offer is the memorandum drafted by plaintiff, an interested party, and that memorandum was received for the truth of its contents. While defendant must be said to have waived any objection to the memorandum based upon CPLR 4519 (*Matter of Mastrianni*, 55 AD2d 784, 785; *see also*, *Phillips v Kantor & Co.*, 31 NY2d 307, 310) and to its introduction as a business record, the memorandum remains the flimsiest of proof of the extension of any offer that was amenable to acceptance.

It is settled that, in a contract action, definiteness is required both as to the terms of the agreement and the intention of the parties to assume the obligation of contract.

"If an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract (*Martin Delicatessen v Schumacher*, 52 NY2d 105, 109; Restatement [Second] of Contracts § 33 [1981]). The doctrine of definiteness serves two related purposes.

*"First*, unless a court can determine what the agreement is, it cannot know whether the contract has been breached, and it cannot fashion a proper remedy (*see, Metro-Goldwyn-Mayer v Scheider*, 40 NY2d 1069, 1070-1071; Restatement [Second] of Contracts § 33 [2] [1981]). This is particularly significant where specific performance is sought. *Second*, the requirement of definiteness assures that courts will not impose contractual obligations when the parties did not intend to conclude a binding agreement (*see*, Restatement [Second] of Contracts § 33 [3] [1981])." (*Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 482, *cert denied* 498 US 816.)

Where the pivotal events are peculiarly within the knowledge of one of the parties, the court must exercise particular diligence concerning the second point (*supra*, at 482-483 [application of the "flexible" standard of definiteness to an agreement depends, *inter alia*, on "the circumstances under which it was made, and the relation of the parties"]).

Even accepting the memorandum proffered by plaintiff dated January 15, 1992 as conclusive evidence of his conversations with John Aldrich on December 16, 1991 and defendant on January 16, 1992, the document fails to demonstrate that a present offer had been extended to plaintiff. The pertinent passage reads: "John Aldrich reported, during our December meeting, that you were *ready to* 'buy me out at three times my original investment.' I subsequently told both you and Frank [Aldrich] that, despite your offer being well below my own appraised value, I *would* accept it." (Emphasis added.) That the decedent might have entertained an opinion that his asserted principal, defendant herein, might be "ready to" buy out plaintiff falls far short of a definite offer, even resolving the hotly contested question of decedent's agency in favor of plaintiff. The words denote an intention to make a future offer, which plaintiff could then accept, not the existence of a present offer subject to immediate acceptance. Significantly, the writing does not allege a contemporaneous acceptance of the purported offer, merely that plaintiff subsequently indicated that he "would" accept it.

The use of the subjunctive is material because, consistent with the decedent's representation with respect to the offer, it too contemplates future action. Thus, the language employed by plaintiff in his memorandum establishes no more than defendant's readiness to extend an offer and plaintiff's expression that such an offer, though less than the anticipated sum, would nonetheless be acceptable. We note that the trial transcript reflects that plaintiff is quite eloquent, and the court does not ascribe his choice of words to mere inadvertence.

With respect to defendant's response, the memorandum goes on to state, "You replied that you do not have the available cash." While plaintiff characterized this as an expression of breach, it is equally consistent with defendant's representation that he did not possess sufficient capital to be capable of making an offer to purchase plaintiff's interest in the banking corporation.

Plaintiff's testimony concerning the response to his alleged acceptance of the buy-out proposal lends support to the absence of any present offer. Plaintiff maintains that he proffered his acceptance on the day after the date of his memorandum, which was allegedly completed on January 16, 1992. On this occasion, defendant denied instructing his brother to convey any offer. Plaintiff testified, "Mr. McLaughlin said, 'I did not instruct him: I told him.'" Again, taking plaintiff's version of the conversation as completely accurate, it establishes merely that defendant "told" the decedent about his readiness to make an offer, as plaintiff's memorandum states, not that defendant "instructed" his brother to extend such an offer subject to plaintiff's acceptance, as asserted at trial. Interestingly, defense counsel objected to this line of questioning, which the court initially overruled and, following a bench conference conducted off the record, later sustained. However, neither the scope of the objection nor the basis of the court's ruling is reflected in the record.

Finally, plaintiff's memorandum contains a strong indication that no binding agreement was ever reached. It continues, "I must therefore conclude that I am at liberty to cut my own deal—in line with your past statements that we are all free to walk at any time." The assertion that plaintiff was free to dispose of his shares in the open market is inconsistent with the position, advanced at trial, that he was subject to a mutual obligation, requiring that plaintiff deliver his shares in the corporation to defendant in return for the payment sought.

Plaintiff made much of defendant's failure to contest the statements contained in his memorandum in the course of cor-

respondence subsequently exchanged between the parties. Rather than an indication of acquiescence in the veracity of plaintiff's averments, however, defendant's silence attests only to their vagueness. The most salient remark memorialized by plaintiff is his comment, "We all know that communications have been at the root of this problem."

Were we not to conclude that plaintiff failed to present proof of a definite offer susceptible of acceptance, we would find that the verdict is against the weight of the evidence. That plaintiff's memorandum was received into evidence on consent does not render it any more reliable. It remains the self-serving statement of an interested party, incapable of assessment in the adversarial forum by the trier of fact because the only other party to the conversation recounted is deceased.

Finally, it is clear that the jury returned a compromise verdict. The value of the award for breach is a matter of simple calculation; liquidated damages equal three times plaintiff's initial investment of $299,858, or $899,574. The evidence permits no basis for disagreement as to the amount, and the verdict could not stand in any event (*Van Der Harst v Koenig*, 249 App Div 235, 236). Concur—Sullivan, P. J., Rosenberger, Nardelli, Rubin and Friedman, JJ.