OPINION OF THE COURT
*108 Fuchsberg, J.
This case raises an issue fundamental to the law of contracts. It calls upon us to review a decision of the Appellate Division, which held that a realty lease’s provision that the rent for a renewal period was “to be agreed upon” may be enforceable.
Thqqrertinent factual and procedural contexts in which thef"case reaches this court are uncomplicated. In 1973, the appellant, as landlord, leased a retail store to the respondent for a five-year term at a rent graduated upwards from $500 per month for the first year to $650 for the fifth. The renewal clause stated that “[t]he Tenant may renew this lease for an additional period of five years at annual rentals to be agreed upon; Tenant shall give Landlord thirty (30) days written notice, to be mailed certified mail, return receipt requested, of the intention to exercise such right”. It is not disputed that the tenant gave timely notice of its desire to renew or that, once the landlord made it clear that he would do so only at a rental starting at $900 a month, the tenant engaged an appraiser who opined that a fair market rental value would be $545.41.
The tenant thereupon commenced an action for specific performance in Supreme Court, Suffolk County, to compel the landlord to extend the lease for the additional term at the appraiser’s figure or such other sum as the court would decide was reasonable. For his part, the landlord in due course brought a holdover proceeding in the local District Court to evict the tenant. On the landlord’s motion for summary judgment, the Supreme Court, holding that a bald agreement to agree on a future rental was unenforceable for uncertainty as a matter of law, dismissed the tenant’s complaint. Concordantly, it denied as moot the tenant’s motion to remove the District Court case to the Supreme Court and to consolidate the two suits.
It was on appeal by the tenant from these orders that the Appellate Division, expressly overruling an established line of cases in the process, reinstated the tenant’s complaint and granted consolidation. In so doing, it reasoned that “a renewal clause in a lease providing for future agreement on the rent to be paid during the renewal term is enforceable if it is established that the parties’ intent was not to *109 terminate in the event of a failure to agree”. It went on to provide that, if the tenant met that burden, the trial court could proceed to set a “reasonable rent”. One of the Justices, concurring, would have eliminated the first step and required the trial court to proceed directly to the fixation of the rent. Each party now appeals by leave of the Appellate Division pursuant to CPLR, 5602 (subd [b], par 1). The tenant seeks only a modification adopting the concurred position. The question formally certified to us by the Appellate Division is simply whether its order was properly made. Since we conclude that the disposition at the Supreme Court was the correct one, our answer must be in the negative.
We begin our analysis with the basic observation that, unless otherwise mandated by law (e.g., residential emergency rent control statutes), a contract is a private “ordering” in which a party binds himself to do, or not to do, a particular thing (Fletcher v Peck, 6 Cranch [10 US] 87, 136; Hart and Sachs, Legal Process, 147-148 [1958]). This liberty is no right at all if it is not accompanied by freedom not to contract. The corollary is that, before one may secure redress in our courts because another has failed to honor a promise, it must appear that the promisee assented to the obligation in question.
It also follows that, before the power of law can be invoked to enforce a promise, it must be sufficiently certain and specific so that what was promised can be ascertained. Otherwise, a court, in intervening, would be imposing its own conception of what the parties should or might have undertaken, rather than confining itself to the implementation of a bargain to which they have mutually committed themselves. Thus, definiteness as to material matters is of the very essence in contract law. Impenetrable vagueness and uncertainty will not do (1 Corbin, Contracts, § 95, p 394; 6 Encyclopedia of New York Law, Contracts, § 301; Restatement, Contracts 2d, § 32, Comment a).
Dictated by these principles, it is rightfully well settled in the common law of contracts in this State that a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable (Willmott v Giar *110 raputo, 5 NY2d 250, 253; Sourwine v Truscott, 17 Hun 432, 434).* This is especially true of the amount to be paid for the sale or lease of real property (see Forma v Moran, 273 App Div 818; Huber v Ruby, 187 Misc 967, 969, app dsmd 271 App Div 927; see, generally, 58 ALR 3d 500, Validity and Enforceability of Provision for Renewal of Lease at Rental to be Fixed by Subsequent Agreement of the Parties). The rule applies all the more, and not the less, when, as here, the extraordinary remedy of specific performance is sought (11 Williston, Contracts [Jaeger 3d ed], § 1424; Pomeroy, Equity Jurisprudence, § 1405).
This is not to say that the requirement for definiteness in the case before us now could only have been met by explicit expression of the rent to be paid. The concern is with substance, not form. It certainly would have sufficed, for instance, if a methodology for determining the rent was to be found within the four corners of the lease, for a rent so arrived at would have been the end product of agreement between the parties themselves. Nor would the agreement have failed for indefiniteness because it invited recourse to an objective extrinsic event, condition or standard on which the amount was made to depend. All of these, inter alia, would have come within the embrace of the maxim that what can be made certain is certain (9 Coke 47a). (Cf. Backer Mgt. Corp. v Acme Quilting Co., 46 NY2d 211, 219 [escalation of rent keyed to building employees’ future wage increases]; City of Hope v Fisk Bldg. Assoc., 63 AD2d 946 [rental increase to be adjusted for upward movement in US Consumer Price Index]; see, generally, 87 ALR3d 986; Lease Provisions Providing for Rent Adjustment Based on Event or Formula Outside Control of Parties.)
But the renewal clause here in fact contains no such in *111 gredients. Its unrevealing, unamplified language speaks to no more than “annual rentals to be agreed upon”. Its simple words leave no room for legal construction or resolution of ambiguity. Neither tenant nor landlord is bound to any formula. There is not so much as a hint at a commitment to be bound by the “fair market rental value” which the tenant’s expert reported or the “reasonable rent” the Appellate Division would impose, much less any definition of either. Nowhere is there an inkling that either of the parties directly or indirectly assented, upon accepting the clause, to subordinate the figure on which it ultimately would insist, to one fixed judicially, as the Appellate Division decreed be done, or, for that matter, by an arbitrator or other third party.
Finally, in this context, we note that the tenant’s reliance on May Metropolitan Corp. v May Oil Burner Corp. (290 NY 260) is misplaced. There the parties had executed a franchise agreement for the sale of oil burners. The contract provided for annual renewal, at which time each year’s sales quota was “to be mutually agreed upon”. In holding that the defendant’s motion for summary judgment should have been denied, the court indicated that the plaintiff should be given an opportunity to establish that a series of annual renewals had ripened into a course of dealing from which it might be possible to give meaning to an otherwise uncertain term. This decision, in the more fluid sales setting in which it occurred, may be seen as a precursor to the subsequently enacted Uniform Commercial Code’s treatment of open terms in contracts for the sale of goods (see Uniform Commercial Code, § 1-205, subd [1]; § 2-204, subd [3]; see, also, Restatement, Contracts 2d, § 249). As the tenant candidly concedes, the code, by its very terms, is limited to the sale of goods. The May case is therefore not applicable to real estate contracts. Stability is a hallmark of the law controlling such transactions (see Heyert v Orange & Rockland Utilities, 17 NY2d 352, 362).
For all these reasons, the order of the Appellate Division should be reversed, with costs, and the orders of the Supreme Court, Suffolk County, reinstated. The certified question, therefore, should be answered in the negative. As to the *112 plaintiff’s appeal, since that party was not aggrieved by the order of the Appellate Division, the appeal should be dismissed (CPLR 5511), without costs.

 Other States which are in accord include: Arkansas (Lutterloh v Patterson, 211 Ark 814) ; Maine (Metcalf Auto Co. v Norton, 119 Me 103); Missouri (State ex rel. Johnson v Blair, 351 Mo 1072; North Carolina (Young v Sweet, 266 NC 623); Oregon (Karamanos v Hamm, 267 Ore 1); and Rhode Island (Vartabedian v Peerless Wrench Co., 46 RI 472). But see: Alaska (Hammond v Ringstad, 10 Alaska 543); Arizona (Hall v Weatherford, 32 Ariz 370); California (Chaney v Schneider, 92 Cal App 2d 88); Ohio (Moss v Olson, 148 Ohio St 625); and Tennessee (Playmate Clubs v Country Clubs, 62 Tenn App 383).