■ MILSAY LEASING AND PARKING CORP., Respondent, v NEW YORK CITY DEPARTMENT OF GENERAL SERVICES et al., Appellants. (Action No. 1.) CITY OF NEW YORK, Appellant, v MILSAY

LEASING AND PARKING CORPORATION et al., Respondents. (Action No. 2.) — Order, Supreme Court, New York County (Leonard N. Cohen, J.), entered May 17, 1984, denying the defendants' (in action No. 1) motions for summary judgment, reversed, on the law, without costs, and the motions for summary judgment are granted to declare that plaintiff Milsay Leasing and Parking Corp. has no equitable or legal rights under the October 1973 lease agreement against any of the defendants; the petitioner City of New York (in action No. 2) is granted summary judgment for possession of the premises 150 Livingston Street, and that matter is remanded for an assessment of damages owed by plaintiff for the fair and reasonable rent for 150 Livingston Street following termination of its subtenancy.

In 1973 the City of New York took title through condemnation of a downtown Brooklyn property which had been designated as an urban renewal site. The condemned property included premises known as 65 Smith Street, in which Milsay Leasing and Parking Corp. (Milsay) had a leasehold interest and ran a parking lot business. That property was later conveyed by the city to the New York State Urban Development Corp. (UDC) pursuant to New York State Urban Development Corporation Act § 14 (McKinney's Uncons Laws of NY § 6264; L 1968, ch 174, § 14) for development as a residential housing project. UDC created Schermerhorn Houses, Inc., as its wholly owned subsidiary to construct the project pursuant to Unconsolidated Laws § 6262. For convenience, Schermerhorn Houses, Inc., will be referred to hereafter as "UDC".

On August 23, 1973 the city leased to UDC another downtown Brooklyn property known as 150 Livingston Street, on a month-to-month basis. Because it was anticipated that Milsay would be required to vacate 65 Smith Street if and when UDC built the housing project, UDC subleased 150 Livingston Street to Milsay under an agreement dated October 4, 1973. Paragraph 10 of that agreement provides: "UDC represents that it will not cause a cancellation of the lease with Milsay affecting 150 Livingston Street for non-default or breach unless and until the City elects to cancel said lease." Paragraph 3 provides that "Milsay shall be required to pay the rent set by the City for the 150 Livingston Street premisis [sic] and shall be subject to all the terms and conditions of the City's lease." The City's lease, for an initial 30-day term, provides: "This lease shall be automatically renewed for a further term of one (1) month unless either party serves upon the other a thirty (30) day notice to terminate the tenancy."

In late 1981 the city announced in an "Auction-Gram" that it would conduct a public bid lease auction on January 7, 1982 for

certain described garages, properties and parking lots, including 150 Livingston Street, and set $3,600 per month as the lowest rental the city would accept for that property. On December 18, 1981 the city served UDC with a 30-day notice to terminate UDC's tenancy as of January 31, 1982. On December 28, 1981, UDC notified Milsay that Milsay's month-to-month sublease was to terminate on January 31, 1982, concurrently with the expiration of UDC's month-to-month lease from the city.

On December 30, 1981, by order to show cause, Milsay commenced an action for a declaratory judgment regarding its rights under the August 23, 1973 lease between UDC and the city. (Milsay alleged in its complaint that the October 4, 1973 agreement constituted an assignment by UDC of the August 23 lease, rather than a sublease. It makes no difference on this appeal since the October 4 agreement explicitly provides that in either case Milsay "shall be subject to all the terms and conditions of the City's lease", and those terms include the explicit right by either party to terminate upon 30 days' notice.) Milsay also sought a preliminary injunction against the auction of the 150 Livingston Street property, but that was denied.

Milsay made the highest bid at the auction for 150 Livingston Street — $13,175 per month for a one-year lease. Milsay thereafter moved by order to show cause to compel the city to waive the $35,925 security deposit and to preclude the city from holding Milsay in default for failure to pay its winning bid rent of $13,175. Although that motion too was denied, Milsay continued to pay only the prior rent of $800 per month.

Since Milsay refused either to vacate 150 Livingston Street or to comply with the bid terms, the city commenced a summary proceeding to evict Milsay from the lot. That proceeding was consolidated with the plenary action pursuant to a motion by Milsay. The city scheduled another auction of the parcel, which Milsay tried unsuccessfully to block. The winning bidder, offering a monthly rental of $11,026, has been unable to move in because of Milsay's continued occupancy at $800 per month.

Whether Milsay must be evicted depends entirely on a determination whether Milsay obtained the right, under the October 4, 1973 agreement, to a "permanent leased premises" as alleged in paragraph 19 of its amended complaint, in the absence of which the UDC and the city allegedly may not remove Milsay from the 150 Livingston Street lot. Milsay contends that it obtained that right in paragraph 8 of the October 4, 1973 agreement, which provides: "It is understood that Milsay wishes to lease space for the permanent relocation of its business within the project. The partnership, of which the Housing Company

[Schermerhorn Houses, Inc.] is a general partner, agrees to enter into negotiations with Milsay for the lease of such space. Should a lease be executed prior to January 1, 1975, and thereafter should Milsay be required to vacate the 150 Livingston Street premises prior to the availability of said commercial space in the new project in Block 170 Housing Company hereby agrees to make further extraordinary relocation payments from the time of such vacation by Milsay in the amount of $2,000 per month for the lesser period of ten months or actual time of vacation of 150 Livingston Street premises to occupy in the project. In no event shall such payments exceed a total of $20,000."

We perceive no genuine factual issue as to whether the above-cited language grants Milsay the right to a permanent leased premises. UDC cannot lease to Milsay space within a project that was never built, and the only promise contained in that paragraph that is relevant herein is that if the project had been built, UDC would have been bound to negotiate with Milsay a lease for such space if such were available. As to Milsay's contention that the paragraph promises a lease under the present circumstances, such a promise would be unenforceable as merely an agreement to agree. (*Martin Delicatessen v Schumacher,* 52 NY2d 105, 109-110.) Moreover, the city was not a party to the agreement with Milsay, and so would not in any event be bound by such promise made by UDC even if it were enforceable. Accordingly, the motions for summary judgment brought by each of the defendants should have been granted and a judgment entered declaring that Milsay Leasing and Parking Corp. has no equitable or legal rights under the October 1973 lease agreement against any of the defendants, a final judgment of possession shall be entered in favor of the City of New York regarding the premises 150 Livingston Street, and the summary eviction proceeding remanded for an assessment of damages owed by Milsay for the fair and reasonable rent for 150 Livingston Street following termination of its subtenancy. Concur — Sandler, J. P., Sullivan, Carro and Rosenberger, JJ.