Maria KARETSOS, a/k/a Mara
Karetsos, Plaintiff,

v.

Luke CHEUNG, Defendant.

No. 86 Civ. 6710 (GLG).

United States District Court,
S.D. New York.

Sept. 28, 1987.

Scotto, Georgoulis & Scotto, New York City, for plaintiff; Chris Georgoulis, of counsel.

Wild & Wild, New York City, for defendant; Patricia B. Wild, of counsel.

## OPINION

GOETTEL, District Judge.

In this diversity action, the plaintiff, an artist, sues defendant, the owner and operator of an art gallery, for breach of a contract pursuant to which the plaintiff and the defendant were to share space in leased premises. The defendant moves for summary judgment on grounds that the contract sued upon is unenforceably vague and that the plaintiff fails to state a claim upon which relief can be granted.

The defendant leased premises on 56th Street in Manhattan, New York for approximately ten years, operating a gallery which specialized in Chinese art and antiquities. The defendant's lease expired on August 31, 1987 and contained a five year renewal clause.

In January 1987, the plaintiff, representing herself as a world famous artist and sculptor, expressed an interest in exhibiting sculptures at the defendant's gallery. The parties entered into an agreement on May 19, 1986. The agreement provided that the plaintiff and the defendant would share the gallery space equally, each being responsible for their own sales and each receiving 5% of the net profit from merchandise sold by the other party. The contract required that each party contribute $6,000, "working capital" to cover three months expenses incurred in the operation of the gallery. The $12,000 working capital was to be deposited in a joint bank account opened immediately upon signing the agreement. Checks drawn upon the account were to be signed by both parties.

The parties also agreed to renovate the premises. The agreement provided that all costs for renovations be divided equally. The plaintiff would advance the total cost for renovations, and the defendant would reimburse the plaintiff for one-half of that cost.

The term of the agreement was for three years beginning June 1, 1986 and ending May 31, 1989. In the event that the landlord would not renew the gallery lease on August 31, 1986, the agreement would expire.

According to the defendant, the plaintiff took charge of the renovations after assuring the defendant that the work would be completed within two weeks. The defendant alleges that although work commenced in mid-June, it was still uncompleted in mid-July when the plaintiff, "abruptly disappeared," leaving the gallery in disrepair. The defendant also alleges that despite numerous requests, the plaintiff would not tender the $6,000 required under the contract and that several bad checks issued by the plaintiff during the renovations had to be covered by the defendant.

The plaintiff alleges that after substantial sums were advanced for the cost of renovations, she informed the defendant on or about July 6, 1986 that she was going on a short trip to Greece in order to raise money necessary for additional expenses, as well as the $6,000 capital contribution.

On July 24, the defendant informed the plaintiff, by letter, that the contract had not been complied with and requested that, if the plaintiff was unwilling to comply, she should notify the defendant so the contract could be cancelled. In a letter dated July 30, the plaintiff advised the defendant that she was ready, willing, and able to comply

with the contract. On the same day, the defendant, by letter, terminated the contract. The plaintiff delivered a check dated August 1, 1986 for $6,000 to the defendant, which check was rejected.

The plaintiff now sues the defendant for (a) breach of contract, and (b) rights under the lease as a Joint Tenant.

The defendant moves for summary judgment dismissing the plaintiff's first cause of action on grounds that, as a matter of law, the contract sued upon is too vague and indefinite to be enforced. The motion is denied for the reasons stated below.

■ The defendant asserts that two material terms in the contract are impermissibly vague. The first, dealing with sharing the leased gallery space, states:

1. "PARTY A [Defendant] and PARTY B [Plaintiff] agree to share the store space known as D.G. Dynasty Galleries (hereinafter premises) located in the Lombardy Hotel, 111 East 56th Street, N.Y., N.Y. 10022."

2. "Party A and Party B shall each engage in the business of retail sales of Art and Antiques and shall equally share the entire space of PREMISES. Both PARTY A and PARTY B are to share space to display each Party's merchandise and each shall be responsible for managing their own stock and keeping their individual records."

The defendant argues that the contract lacks any description as to how the premises are to be divided by the parties, and therefore is merely an "agreement to agree." He cites the New York[1] case of *Joseph Martin, Jr., Delicatessen, Inc. v. Schumacher*, 52 N.Y.2d 105, 436 N.Y.S.2d 247, 417 N.E.2d 541 (1981), in which the court held that a lease containing the clause, "annual rentals to be agreed upon," was unenforceable. The court stated, "... it is rightfully well settled in the common law of contracts in this state that a mere agreement to agree, in which a material term is left for future negotiations, is unen-

forceable." *Id.* at 110, 436 N.Y.S.2d 247, 417 N.E.2d 541.

The instant case is dissimilar to *Joseph*. The parties have not agreed merely to divide up the gallery space, but to do so "equally." This additional element describes the manner in which the leased premises are to be divided. As stated in *Joseph*, "... It would certainly have sufficed, for instance, if a methodology for determining the rent was to be found within the four corners of the lease." *Id.*

The parties have agreed to the amount of space in the gallery each will be entitled to utilize and this amount is determinable with certainty. Whether the respective art pieces will be placed on the left or right side of the gallery need not be stated in order to establish an enforceable contract. A contract need not be fixed with complete and perfect certainty in order to have legal effect. *V'Soske v. Barwick*, 404 F.2d 495, 500 (2d Cir.1968), *cert. denied*, 394 U.S. 921, 89 S.Ct. 1197, 22 L.Ed.2d 454 (1969).

■ The defendant argues that contributions to be made under the contract for a working capital fund are impermissibly vague. He asserts that the contract does not explicitly state the period of time for which the working capital fund is to be utilized and that the contract fails to set a limit on the amount of money the parties must contribute under the agreement.

The Court need not reach this argument in denying the defendant's motion, as the capital requirement is not a material term of the contract. The contract provides for the sharing and renovation of the leased premises by the parties with a division of all expenses involved. Under the contract, the plaintiff is obligated to advance all costs for the renovations and the defendant is obligated to reimburse 50% of those costs and divide the premises with the plaintiff. A legal contract exists independently of the capital requirement, which merely provides a manner in which to deal with certain expenses.

**1.** New York law governs this contract which was executed and is to be performed in New York. Restatement (Second) of Conflicts of the Law § 188 (1971).

The motion for summary judgment dismissing the plaintiff's first cause of action is denied.

■ The defendant moves for summary judgment dismissing the plaintiff's second cause of action on grounds that it fails to state a claim upon which relief can be granted. The plaintiff's second cause of action is actually a damage claim based upon the same breach of contract alleged in the first cause of action. While we see no way that the plaintiff can claim an interest in the lease as joint tenant, since the second cause of action does not state an independent claim, we need not dismiss it as such, but rather, as discussed below, merely restrict the plaintiff's claim for damages.

### Damages

In her amended complaint, the plaintiff claims damages, "generally to the extent of $500,000" by virtue of the defendant's alleged breach of contract. These damages include $91,377, representing the market value of the lease as testified to by the plaintiff's expert witness; $38,078 for the cost of renovations; $250,000 in lost profits; and damages for injury to the plaintiff's reputation. For the reasons stated below, the plaintiff's damages are limited to recovery of expenditures made in renovating the gallery, and restitution damages, if any, exist.

### Rights to the market value of the lease

■ The plaintiff claims that she, "had in essence become a joint tenant under that lease enjoying all the lease rights and sharing equally in the obligations under said lease." She therefore claims damages in the amount of one-half [2] of the market value of the lease.

Although the contract provides for equal sharing of the leased space and rental costs, there is no evidence as to any legal relationship between the landlord and the plaintiff. Nothing in the contract indicates that the plaintiff is to be a tenant of record under the lease, or that the landlord would have any legal recourse against the plaintiff in the case of default. Neither the lease on the premises, nor the contract between the parties make any mention of a joint tenancy being established or contemplated by the parties.

The plaintiff asserts that she is a third party beneficiary of the lease made between the landlord and the defendant. Although this may raise a factual question as to the defendant's intent to benefit the plaintiff when signing the new lease, the plaintiff has made no showing that as a third party beneficiary she would be entitled to one-half of the market value of the lease. Furthermore, the plaintiff claims an interest in the lease for its entire renewal term of five years, however the period recited in the contract between the plaintiff and the defendant is for only three years. The plaintiff could not, in any event, have an interest in the lease for two years beyond the term of her contract. The plaintiff will not be allowed to prove the value of the lease.

### Damages for lost profits

■ The plaintiff claims $250,000 in damages for lost profits due to her failure to sell works of art intended for the gallery. It must first be noted with respect to damages that, pursuant to an order by Magistrate Roberts, the plaintiff's damages are limited to the deposition pages and exhibits cited by the plaintiff in her answers to the defendant's first set of interrogatories to the plaintiff and to the testimony of her expert witnesses. On this basis there is insufficient proof of lost profits. Although the plaintiff states in her depositions that she created and held numerous artworks for sale in the gallery, there is no evidence to determine the value of these artworks, whether they would have been sold if in the gallery, and whether she has suffered any loss by retaining them until the present date. The plaintiff states that the unsold works of art, with the exception of two which she sold to another gallery, are still in her home. She also claims that she is a world recognized artist with a proven track record of sales

**2.** According to the plaintiff's expert, one-half of the market value of the lease, is in fact $45,750, and not the $91,377 figure appearing in the complaint.

over numerous years. Presumably, and without any showing to the contrary, the unsold works could be sold today for their full present value, and no profits have been lost.

 The plaintiff also claims damages for her inability to work and create new artwork during the period renovations were being performed on the gallery. The plaintiff's attorney[3] states that the plaintiff, "will establish at the time of trial that she had a definite earning capacity and a market for her items." The plaintiff also states, "it is for the trier of the facts to determine from the evidence presented at trial as to the amount of her lost profits, .. plaintiff need not produce the evidence which would determine the amount of her lost profits, if any, as indicated above." In this assertion, the plaintiff makes an error fatal to her claim with respect to these damages. Fed.R.Civ.P. 56(e) states,

> "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him."

The plaintiff has not met the requirements of this rule with respect to damages for lost profits. ·

 Furthermore, even had there been sufficient proof that the plaintiff could not produce works of art during the period that renovations were being made on the gallery, the plaintiff would not be entitled to greater compensation than she would have had if the contract had been performed. The plaintiff entered the agreement and took responsibility for the renovations on the expectation that she would be able to exhibit and sell whatever artwork she had already created or would be able to create during the period of renovations. She can-

not claim damages for artworks she could not create while performing the contract.

*Damages to the plaintiff's reputation*

 The plaintiff fails to produce any evidence showing the extent of harm, if any, that has been caused to her reputation by the alleged breach. Even were proof to be offered, such damages are generally not recoverable for breach of contract in New York State. *MacArthur Constr. Corp. v. Coleman,* 91 A.D.2d 906, 457 N.Y.S.2d 530, 531 (1st Dept.1983), *Dember Construction Corp. v. Staten Island Mall,* 56 A.D.2d 768, 392 N.Y.S.2d 299 (1st Dept.1977).

In conclusion, the motion for summary judgment is denied. The motion to limit damages is granted to the extent indicated above.

SO ORDERED.

---

**3.** In opposition to this motion, the plaintiff's attorney submitted an affirmation on behalf of the plaintiff, who is presently out of the country.