■ GILLIS ADDISON, Respondent, v BRUCE ADDISON, Appellant. [595 NYS2d 766] —Order, entered on or about January 23, 1992, in the Supreme Court, New York County (Alice Schlesinger, J.), which denied defendant's motion for summary judgment, is unanimously modified, on the law, to grant summary judgment to plaintiff, and otherwise affirmed, without costs or disbursements. The Clerk is directed to enter judgment in favor of plaintiff for specific performance as requested in the Complaint.

Plaintiff, Gillis Addison, brought this action to compel her husband, defendant, Bruce Addison, to abide by the terms of an agreement that was both handwritten and signed by defendant in May 1980, and to which the parties had allegedly adhered since its execution.

The May 1980 document was drafted as the parties sat in the kitchen of plaintiff's Southampton home, without the aid of any attorney. The handwritten document itself reads *in toto:*

"Provided we can arrive at an amicable agreement of our financial situation and not have to go to court, I will sign over to you the participation I have in the Mannequin Pension Program and my land on Coopers Neck Lane—you will have any tax liability of such transfers. I will however, endeavor to do such transfer with the least possible tax liability to you.

"I will take financial responsibility for the boys immediately and you take all costs of 11 East 68th Street and Coopers Neck Lane as of May 1, 1980.

"I will keep 1212 Adrianna Avenue—Coral Gables, Fla. and the 12 acres in Shinnecock Hills, New York and my ownership in PW Communications and its related companies.

"You keep Coopers Neck Lane house and property and Mannequin.

"/s/ Bruce Addison/

"You will have the option to take 50% of my holdings in Canning Land and Cattle but you accept 50% of my liability in it, if you do so.

"You may deduct the amount of the boys' spring vacation from our tax refund and bills totalling $1,600.

"Also you may deduct the 1978 tax adjustment which you paid, from the refund.

"I will also sign over the 1971 Mustang. I will sign over the 1967 Mustang.

"/s/ B.A."

This single paged document was written in its entirety by defendant. There are several corrections initialed by defendant, the most significant contained in the first line wherein "I will consider signing over" was changed to read "I will sign over".

As for the property itself, it appears that on May 1980 defendant husband owned in his name: (a) 38% of a publishing business by the name of PW Communications; (b) 12 acres in Shinnecock Hills in the Hamptons on Long Island; (c) property in Coral Gables, Florida; (d) a venture by the name of Canning Land & Cattle; (e) approximately 2.5 acres of undeveloped land in Southampton referred to as the Coopers Neck Lane property; (f) participation in a Mannequin Pension Plan; (g) interest in the lease of an apartment at 11 East 68th Street, New York, New York; and (h) various articles of personal property.

Plaintiff wife owned Mannequin Models (a small modelling agency), an interest in the Mannequin Pension Plan, an interest in the lease at 11 East 68th Street, and title to the Southampton home on Coopers Neck Lane.

Immediately after defendant signed the document at issue, he sent plaintiff two letters. The first, dated May 9, 1980, reads in pertinent part:

"Dear Gillis:

"The homeowners policy is on the Coopers Neck Lane house and the apartment 11 East 68th Street. Since they are both yours, I believe it is fair that you pay the premium. In any event, I am stretching myself to come up with the boys camp and literally do not have the money."

The second letter, dated May 29, 1980, reads in pertinent part:

"Dear Gillis:

"Enclosed are the tax bills for the property on Coopers Neck

Lane. Since I have agreed to give it to you, I believe you should pay the taxes. I do not have the money in any event."

Thereafter, consistent with the agreement and these letters, plaintiff-wife began paying the taxes and the premiums on the insurance policy for both the Southampton house and the East 68th Street apartment. In addition, the parties began to dispose of their respective properties, to wit, on two separate occasions in 1983 and 1987, defendant sold his share in PW Communications for an aggregate amount of $5,700,000 and the 12 acres of Shinnecock Hills property in 1984 for $385,000, while plaintiff sold Mannequin Models in 1984 for $650,000. Neither party laid any claim to the other's sale of said property, and defendant continued to pay child support as per 1980 "agreement" until emancipation.

Thereafter, in 1987 plaintiff requested that defendant sign a deed formally transferring the Southampton property, as well as signing a note of relinquishment of any rights to plaintiff's pension benefits from Mannequin Models, but defendant refused, resulting in this action.

As the Supreme Court stated in its decision, the intention and the purpose of an agreement, together with the nature of the rights created, is to be ascertained by the reasonable construction of the language and the subsequent acts of the parties (citing 22 NY Jur 2d, Contracts, § 197, at 39-40). We agree with that proposition; however, we find that upon the facts presented, plaintiff was entitled to summary judgment and pursuant to CPLR 3212 (b), the Supreme Court should have searched the record and granted such judgment without the necessity of a cross-motion.

The parties here accepted and abided by the terms of the agreement in question for seven years. The contractual conditions were satisfied by plaintiff, e.g., taxes were paid, insurance policies remained in force, etc. Defendant now seeks to renegotiate the terms of the agreement and the ownership of the property which was given to plaintiff. Since defendant received the benefits of his bargain, he should now be held to that bargain.

As was said by the Court of Appeals in *Martin Delicatessen v Schumacher* (52 NY2d 105, 110): "Nor would the agreement have failed for indefiniteness because it invited recourse to an objective extrinsic event, condition or standard on which the amount was made to depend."

The May 1980 draft agreement, handwritten and signed by defendant with all modifications initialed, together with the

parties' subsequent writings and actions clearly evidenced both the expectations and the respective duties of the parties, as to the subject properties. Consequently, we find that the Supreme Court should have searched the record pursuant to CPLR 3212 (b) and granted plaintiff summary judgment, and we modify the order appealed from accordingly. Concur—Murphy, P. J., Wallach, Ross and Asch, JJ.