[6 NYS2d 388]

KRISTEN SMITH, Plaintiff, v STEVEN DINELLI, Defendant.

Justice Court of the Town of Hyde Park, Dutchess County, November 13, 2013

432

## APPEARANCES OF COUNSEL

*Kristen Smith*, plaintiff pro se.
*Steven Dinelli*, defendant pro se.

## OPINION OF THE COURT

DAVID L. STEINBERG, J.

Plaintiff Kristen Smith commenced this small claims action against defendant Steven Dinelli to recover $1,089.97 in Smith's eBay sale of United States silver quarters to Dinelli. Smith and Dinelli were both present and testified, as did Dinelli's mother, Michelle Dinelli. The court has reviewed the evidence, credits the testimony of all three witnesses, and makes the following findings and conclusions:

## Facts

The essential facts are not in dispute. On or about March 1, 2013, Smith advertised on eBay to sell a set of quarters. The specific listing stated: "Set of 70 Coins *90% SILVER Quarters Washington* Mix Lot Year & Mint before 1964." A photo alongside the sale description shows seven rows of quarters with 10 quarters in each row, or 70 quarters. (Plaintiff's exhibit A.) The sale was consummated on March 8, 2013 with Dinelli making the winning bid of $383.01. With expedited shipping charges of $6.99, Dinelli paid Smith, via PayPal, a total of $390. The sale invoice and transaction summary both refer to the "Set of 70 coins *90% SILVER Quarters Washington* Mix Lot Year & Mint before 1964" (plaintiff's exhibit A).

On March 9, 2013, Smith shipped 280 quarters to Dinelli. She claimed this was an inadvertent mistake, and that the sale was indisputedly for 70 quarters, not 280 quarters. She points to Dinelli's initial surprise at receiving more than 70 coins as indicative that a shipping mistake had been made.

On March 11, 2013, Dinelli sent Smith an email questioning whether she shipped him too many quarters. The email stated, "Just received your package, cannot thank you enough, Idk if you realize what you sent me but you sent me more than 70 coins. Please get back to me ☺ thanks again."

After Smith made several unsuccessful attempts to contact Dinelli, she received an email from Dinelli on March 16, 2013 that stated: "Got all your messages, I Just Got Back From Vacation And Before ILeft I Counted Quick And Thought I Received 80**I Was Mistaken And Only Received For What I Payed, Which was 70 Coins. Sorry Too Song Long For Me To Respond kristen, Have a Good One."

Dinelli later appeared to concede he received 280 quarters, but he asserted his right to keep all of them. When Smith asked for the return of 210 of the 280 quarters, he declined to return them. When Smith offered to buy them back for $500, he rejected the offer.

At trial, Dinelli contended the photograph in the posted offering showed 280 quarters, and that he had successfully bid on what was shown in the photograph. As proof of his assertion, he offered an enlarged photo that shows each quarter in the photo is actually not one quarter, but a stack of four quarters. That is, the enlarged photo shows 280 quarters. He also submitted a screenshot copy of what purports to be the

same "70 Coins *90% SILVER Quarters Washington*" offering from Smith that states: "All items I sell are offered as is. Stated condition of item is based on cosmetic appearance. All items I offer for sale are from my collections . . . ." (Defendant's exhibit 2.)

Dinelli contends in his defense that he successfully bid on whatever number of quarters were in the photograph representing the "cosmetic appearance" of the sale items. (Defendant's exhibit 1, admitted over objection.) In response, Smith claims she used a stockphoto, and that the sale was for 70 silver quarters, a number never in doubt until she shipped 280 quarters to Dinelli by mistake.

Smith seeks $1,089.97 in damages from Dinelli for the additional 210 quarters shipped to him. She offered no proof, by way of expert testimony or otherwise, as to the value of the additional 210 quarters, or how she would segregate the additional 210 quarters from the 280 quarters shipped to him.

## Analysis

In a small claims proceeding, the court must seek to do substantial justice between the parties. (UJCA 1804.) The plaintiff who brings the lawsuit bears the burden of proof as to liability and damages. Here, plaintiff has brought this claim and must present sufficient proof to establish the defendant's liability or responsibility for damages by a preponderance of the evidence.

## The Legal Relationship between the Parties

eBay is an Internet "auction" site. Registered seller users can use the site to sell to registered purchasers various goods and merchandise. Sales and purchases on eBay generally may be made in one of two ways. The "Buy It Now" option is one in which the seller states an offered finite price for which specified goods or merchandise will be sold, and the purchaser may accept that offer and electronically commit to buy using the eBay site protocols. By contrast, the "Auction" option is a solicitation by the seller for bids for a specified item within a stated finite period of time. As a bid is electronically made, registered and displayed on the eBay listing, a successively higher bid amount is required to purchase the item. The highest successive bid at the conclusion of the period is the winner and successful purchaser. The acceptance of the highest bid is measured by the expiration of the bidding period, which event is

tantamount to the striking down of the gavel at a traditional live auction.

Despite the popularity of eBay and similar Internet "auction" sites, there appears to be no controlling New York authority concerning the legal relationship between sellers and purchasers utilizing these sites. As the first step in determining this matter, the court must determine—as with other eBay sellers and purchasers using the "auction" option—whether the plaintiff and defendant had a contractual relationship.

It is hornbook law that one must look to the basic elements of an offer and an acceptance of the offer to determine whether there is an objective meeting of the minds sufficient to give rise to a binding and enforceable contract. (*Matter of Express Indus. & Term. Corp. v New York State Dept. of Transp.*, 93 NY2d 584, 589 [1999].)

An auction bid is an offer by an intending purchaser to pay a designated price, which, when accepted under the terms of sale, amounts to a contract. (*Matter of Magnotta v Gerlach*, 275 App Div 854 [2d Dept 1949].)

In considering whether it had long-arm jurisdiction over an out-of-state eBay seller, the New York City Civil Court noted:

> "There is little question as to whether a contract was formed. The mutual assent of the two parties is evidenced through the eBay bidding process, payment and the ultimate shipment of goods. In the eBay terms and conditions members agree to abide by eBay policies which state clearly 'when a seller lists an item on eBay, and the buyer bids for and wins that item, the seller and buyer have entered into a contract. Both members are expected to honor that contract.' " (*Sayeedi v Walser*, 15 Misc 3d 621, 629 [Civ Ct, Richmond County 2007].)

In the instant proceeding, the court finds that the plaintiff was a registered eBay seller who, by the listing of March 1, 2013, solicited offers to purchase a lot of 70 coins. The defendant, also a registered eBay user, by bidding on the eBay website, offered to purchase the lot of 70 coins for the price of $383.01. The offer was accepted and the sale of the lot of 70 coins was completed on March 8, 2013 when the figurative hammer was struck down and the auction ended. (*See* UCC 2-328 [2] ["A sale by auction is complete when the auctioneer so announces by the fall of the hammer or *in other customary manner*" (emphasis supplied)].)

The court determines that the relationship between the parties was a contractual one.

## Meeting of the Minds and the Subject Matter of the Contract

Having decided that there was a contract between the parties, the court must determine whether the contract was for the purchase and sale of a lot of 70 coins or, as the defendant asserts, a lot of 280 coins.

In determining what were the terms of the parties' contractual agreement the court must examine "the objective manifestations of the intent of the parties as gathered by their expressed words and deeds" (*Brown Bros. Elec. Contrs. v Beam Constr. Corp.*, 41 NY2d 397, 399 [1977]; *see also Mencher v Weiss*, 306 NY 1, 7 [1953]). There must be a meeting of the minds as to the material terms of the agreement. (*Joseph Martin, Jr., Delicatessen v Schumacher*, 52 NY2d 105 [1981].)

Any reasonable reading of the words contained in the plaintiff's eBay listing indicates that the items being sold are 70 pre-1964 quarters. Since there is no precise, separate identification of each coin, it is apparent that the plaintiff intended to solicit offers for a lot consisting of 70 such coins.

The defendant urges that the picture contained in the listing shows more than 70 coins, and he claims that he believed he was buying all the coins portrayed in that photograph. That claim, however, is betrayed by all the other documentary evidence, including the sale invoice and the sale summary transmitted to the defendant. Each showed 70 coins. In his March 11, 2013 email sent to the plaintiff after he received the coins, the defendant alerted the plaintiff that she had shipped "more than 70 coins." On March 16, 2013, in another email to plaintiff, the defendant stated that he was mistaken that he received any more than 70 coins and explicitly acknowledged he "Only Received For What I Payed, Which was 70 Coins."

█ It is patently clear that there was a meeting of the minds that what was being sold and purchased was one lot of 70 coins, and the picture accompanying the listing was of a larger collection from which the one lot was to culled. (*See* UCC 2-328 [1] ["In a sale by auction if goods are put up in lots each lot is the subject of a separate sale"].)

In light of all the written documentation surrounding the listing and the transaction, it is neither legally plausible nor credible to accept the defendant's position that he relied on one photograph, which had to be enlarged to view the detail, in

formulating an idea that he was bidding on and purchasing 280 coins. Notwithstanding an old adage, one picture was not worth 280 coins.

## Conversion

The tort of conversion "takes place when someone, intentionally and without authority, assumes or exercises control over personal property belonging to someone else, interfering with that person's right of possession" (*Colavito v New York Organ Donor Network, Inc.*, 8 NY3d 43, 49-50 [2006]).

■ Once the contractual elements of payment and shipping had occurred, the defendant was aware that he received substantially more coins than he had bargained for, and he initially so notified the plaintiff. When the plaintiff demanded the return of her mistakenly shipped property and even offered the defendant what can only be described as a ransom or reward for her property, the defendant refused to do so. He has never returned the 210 extra coins and intentionally and without authority exercised control over the plaintiff's property.

The court finds that the defendant committed the tort of conversion.

## Damages

■ Although the plaintiff presented no expert or other direct proof as to such, there is sufficient evidence before the court permitting it to calculate the plaintiff's damages and to adhere to the statutory mandate of providing "substantial justice."

The reasonable value of the coins is their fair market value. A commonly accepted definition of "fair market value" is the definition used by the Internal Revenue Service in determining such value for charitable deductions, conversion of business assets, estate valuation and other tax related matters: "Fair market value (FMV) is the price that property would sell for on the open market. It is the price that would be agreed on between a willing buyer and a willing seller, with neither being required to act, and both having reasonable knowledge of the relevant facts." (Internal Revenue Service Publication No. 561, *Determining the Value of Donated Property* at 2; *see also United States v Cartwright*, 411 US 546, 551 [1973].)

Using the foregoing definition, fair market value of a lot of 70 pre-1964 silver quarters was determined by the parties to be $383.01. Since the defendant converted 210 coins, the equiv-

alent of three lots of 70 coins, the fair market value of the converted coins is $1,149.03—an amount greater than the $1,089.97 the plaintiff seeks in damages.

## Determination

Accordingly, the court determines that the plaintiff should have judgment against the defendant in the amount of $1,149.03 plus court costs of $15 for a total amount of $1,164.03.