13-2720-cv
Hudson & Broad, Inc. v. JC Penney Corp.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**Rulings by summary order do not have precedential effect. Citation to a summary order filed on or after January 1, 2007, is permitted and is governed by Federal Rule of Appellate Procedure 32.1 and this court's Local Rule 32.1.1. When citing a summary order in a document filed with this court, a party must cite either the Federal Appendix or an electronic database (with the notation "summary order"). A party citing a summary order must serve a copy of it on any party not represented by counsel.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at 40 Foley Square, in the City of New York, on the 28th day of January, two thousand fourteen.

Present:    ROBERT A. KATZMANN,
                    *Chief Judge*,
            DEBRA A. LIVINGSTON,
                    *Circuit Judge,*
            ANDREW L. CARTER, JR.,
                    *District Judge*.[*]

_____

HUDSON & BROAD, INC.,

                    *Plaintiff-Appellant*,


                    - v -                                        No. 13-2720-cv

J.C. PENNEY CORPORATION, INC.,

                    *Defendant-Appellee.*

_____

For Plaintiff-Appellant:            PETER M. LEVINE, New York, NY

For Defendant-Appellee:          MARTIN D. EDEL, Miller & Wrubel P.C., New York, NY
                                (Melinda Y. Balli, J.C. Penney Corporation, Inc., Plano, TX,
                                *on the brief*)

_____

[*] The Honorable Andrew L. Carter, Jr., United States District Judge for the Southern District of New York, sitting by designation.

Appeal from the United States District Court for the Southern District of New York (Forrest, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED,** and **DECREED** that that the judgment of the district court be and hereby is **AFFIRMED**.

Plaintiff-Appellant Hudson & Broad, Inc. ("H&B"), appeals from a judgment entered by the United States District Court for the Southern District of New York on June 19, 2013, which dismissed H&B's complaint with prejudice pursuant to two orders by the district court (Forrest, *J.*) granting the motions of defendant J.C. Penney Corporation, Inc. ("JC Penney") to dismiss H&B's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

The first of the district court's two orders dismissed H&B's complaint without prejudice and gave H&B leave to replead any and all claims it wished to pursue in the action. H&B amended its complaint shortly thereafter, asserting claims against JC Penney sounding in breach of contract, misappropriation, unjust enrichment, and quantum meruit. H&B's substantive arguments on appeal challenge only the district court's reasons for dismissing its amended complaint with prejudice, so we focus our analysis on the second of the district court's orders and the four causes of action advanced in H&B's amended complaint. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal.

We review a district court's dismissal of a complaint pursuant to Rule 12(b)(6) *de novo*, accepting all of the complaint's factual allegations as true and drawing all reasonable inferences in the plaintiff's favor. *Doe v. Guthrie Clinic, Ltd.*, 710 F.3d 492, 495 (2d Cir. 2013). Having conducted that review, and for the reasons that follow, we affirm the district court's dismissal of H&B's complaint in its entirety.

We turn first to H&B's claim for breach of contract. To state a claim for breach of contract under New York law, a plaintiff must allege "(1) the existence of an agreement, (2) adequate performance of the contract by the plaintiff, (3) breach of contract by the defendant, and (4) damages." *Harsco Corp. v. Segui*, 91 F.3d 337, 348 (2d Cir. 1996). Taking all of H&B's allegations in its amended complaint as true, we agree with the district court that H&B has failed to plausibly allege the first of these elements.

H&B designs and manufactures fixtures for the display of merchandise in retail stores. In late 2011 and early 2012, JC Penney approached H&B for assistance "with a major branding initiative for [its] Manhattan store," which involved the creation of a light fixture to correspond with JC Penney's new "fair and square" branding initiative. Am. Compl. ¶¶ 1, 12-15. At bottom, H&B contends that it concluded a contract with JC Penney in early 2012 relating to the production of a large number of custom light fixtures (or "Squares") in connection with JC Penney's "fair and square" brand initiative.

H&B's putative contract with JC Penney seems to resist any clear description in H&B's amended complaint or briefing on appeal. Nevertheless, H&B contends that it arrived at a sufficiently definite agreement with JC Penney to satisfy the first element of its breach-of-contract claim notwithstanding the amended complaint's allegation that at a meeting on February 1, 2012, H&B's representative "sought assurance that JCP viewed H+B as a fixture manufacturer, not a design firm, [and] that both sides were working toward a purchase order." Am. Compl. ¶ 33. Indeed, the amended complaint alleges that after JC Penney offered to pay H&B a fee for its design services, H&B "rejected that sop, reminding [a JC Penney employee] that H+B was a manufacturer, not a design firm, and had no interest in receiving a design fee. In

3

line with the agreement reached at the February 1 meeting, . . . H+B expected to receive an order for the manufacture of the Squares." Id. ¶ 52.

Like the district court, we need not choose which of H&B's protean descriptions of the nature of its contract with JC Penney should be credited because none of the amended complaint's allegations, nor all of them taken together, plausibly allege either (1) that there was a meeting of the minds between JC Penney's employees and H&B's principals over sufficiently definite terms to constitute an enforceable contract or (2) that the JC Penney employees with whom H&B treated had the authority—either actual or apparent—to bind their principal to a "design and manufacture" contract with H&B. Either deficiency is independently fatal to H&B's breach of contract claim.

As to the district court's conclusion that the putative agreement between H&B and JC Penney was insufficiently definite to constitute an enforceable agreement between the parties, we note the well-settled principle of New York law that "[i]f an agreement is not reasonably certain in its material terms, there can be no legally enforceable contract," which principle ensures that "courts will not impose contractual obligations when the parties did not intend to conclude a binding agreement." *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 74 N.Y.2d 475, 482 (1989) (citing *Martin Delicatessen v. Schumacher*, 52 N.Y.2d 105, 109 (1981)). We have since parsed *Martin Delicatessen* and its progeny to stand for the proposition that mere "agreements to agree" will not constitute enforceable contracts under New York law, in contrast to agreements that leave discrete material terms unspecified but nevertheless set mechanisms for objectively setting material terms in the future. *Arbitron, Inc. v. Tralyn Broadcasting, Inc.*, 400 F.3d 130, 137 (2d Cir. 2005).

4

Having reviewed the amended complaint in full, we find ourselves in complete agreement with the district court that the putative agreement between H&B and JC Penney was too indefinite to constitute a contract. At the February 1, 2012 meeting, at which the amended complaint alleges a contract was formed, H&B alleges that the following negotiation occurred:

> Opening the meeting by saying how thrilled he was with the Square, Francois [a JC Penney employee] began to plan dates for the installation of Squares in JCP stores across the country. Before continuing, [H&B principal] Maharg sought assurance that JCP viewed H+B as a fixture manufacturer, not a design firm, that both sides were working toward a purchase order for H+B to deliver Squares, and that JCP would not knock-off H+B's design. [Maharg] said to Francois, "We are not a design firm. We do not sell designs. We sell fixtures, which are custom-designed for our customers. I want your assurance that the square Hudson and Broad will design for J.C. Penney is proprietary and is ours." Francois agreed. He asked Maharg to give a price for [two sizes of the custom light fixture], and [a] mannequin platform. Maharg was not prepared to quote prices. Francois said, "Give me a rough number. I'm meeting with Kramer tomorrow," referring to Michael Kramer, Chief Operating Officer for JCP. "I'll give you a price later today," said Maharg, "What's the next step?" "Getting you a purchase order and a deposit," said Francois. Maharg left the meeting convinced that H+B would receive an order. Later that day, by phone, Maharg quoted a price [for each version of the light fixture and the mannequin platform].

Am. Compl. ¶ 33. We agree with the district court that the so-called "hybrid" contract agreed upon at the February 1 meeting left the thing of value for which the parties bargained—whether design services, the manufacture and sale of goods, or some permutation of the two—irredeemably vague and undefined. Indeed, insofar as the agreement might be construed, in whole or in part, as a services contract, H&B actually disclaimed the provision of any design services (or any other analogous deliverable) to JC Penney. The February 1 meeting was, construed in a light most favorable to the plaintiff, an agreement to agree; that is, to "work[] toward a purchase order," *id.*, for the manufacture and sale of a large number of light fixtures to JC Penney. None of the further allegations of the amended complaint alters that conclusion or

5

brings more definiteness to the alleged agreement between H&B and JC Penney. We therefore conclude that the putative contract between H&B and JC Penney was so impenetrably vague and uncertain, *Martin Delicatessen*, 52 N.Y.2d at 109, as to be unenforceable.

Moreover, assuming for the sake of argument that the agreement between H&B and the JC Penney employees with whom it negotiated were sufficiently definite to constitute an enforceable agreement, we agree with the district court that the allegations of the amended complaint, taken as true, fail to establish that any of the employees at JC Penney with whom H&B's principals allegedly agreed to design and manufacture $20 million in display fixtures possessed authority to bind JC Penney to the contract. *See Merrill Lynch Interfunding, Inc. v. Argenti*, 155 F.3d 113, 122 (2d Cir. 1998) ("[A]n agent must have authority, whether apparent, actual or implied, to bind his principal."). For substantially the reasons given by the district court, we conclude that any contract purportedly formed between H&B and the JC Penney employees described in the amended complaint would not bind JC Penney as principal. We therefore agree with the district court that the amended complaint fails to plausibly allege that any employee with whom H&B allegedly concluded a contract had actual or apparent authority to bind JC Penney as principal. H&B's claim for breach of contract was therefore properly dismissed.

Turning to the quantum meruit and unjust enrichment claims, we note that we have occasionally analyzed these two causes of actions under New York law as a single claim. *See, e.g.*, *Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp*., 418 F.3d 168, 175 (2d Cir. 2005) (analyzing the two causes of action "as a single quasi contract claim"). In its simplest terms, "[t]o sustain a claim of unjust enrichment a plaintiff must show that the defendant has at the plaintiff's expense been enriched and unjustly so, such as when the defendant receives requested

6

goods or services without paying any compensation therefor." *S.S. Silberblatt, Inc. v. East Harlem Pilot Block*, 608 F.2d 28, 37 (2d Cir. 1979). Somewhat similarly, in order to recover in quantum meruit under New York law, a plaintiff must establish "(1) the performance of services in good faith, (2) the acceptance of the services by the person to whom they are rendered, (3) an expectation of compensation therefor, and (4) the reasonable value of the services." *Mid-Hudson Catskill*, 418 F.3d at 175 (internal quotation marks omitted).

We need not enumerate the elements of each claim or determine their overlap to affirm the district court's conclusion that the amended complaint fails to plausibly state a claim for either equitable remedy. Like the district court, we conclude that H&B disclaimed any compensation for the value of its design services—impliedly, at least, in its amended complaint and expressly in its briefing below—and so cannot recover the value of those services in quasi-contract. Indeed, in its briefing below, H&B ridiculed JC Penney for contesting its liability for design services using the following language:

> JCP attacks the claim for unjust enrichment, as well as the claim for quantum meruit, by pretending that H+B is still seeking a design fee. This is nothing but an obdurate refusal to read what is clearly written. H+B is not seeking a design fee at all under the unjust enrichment claim, and the [amended complaint] . . . states beyond cavil that H+B is not seeking merely a design fee under the quantum meruit claim.

Pl's Mem. in Opp. to Mot. to Dismiss, D. Ct. Dkt. No. 36, at 23 (citation omitted). In light of this argument below—whether framed as a "disclaimer" or waiver of an equitable remedy for its design services—we agree with the district court that the value of H&B's design services is not compensable in quasi-contract. Indeed, even absent this waiver, we would be hard-pressed to translate H&B's contorting description of what thing of value it provided to JC Penney into equitable relief since even on appeal, H&B maintains mutually incompatible descriptions of the

7

value it provided to JC Penney. *Compare* Br. for Pl.-Appellant at 24 (restating that H&B "sought assurance that JCP viewed H+B as a fixture manufacturer, not a design firm"), *with id.* at 36 ("The contract made by H+B and JCP, though encompassing both design and manufacture, was predominantly for design services. . . .").

Insofar as there is some residual substance to H&B's quantum meruit claim that is not reached by its waiver of the value of its design services (a proposition we find dubious), for substantially the same reasons as those given by the district court, we conclude that the preparatory work that H&B undertook in an attempt to secure a manufacturing contract from JC Penney is not compensable in quasi-contract. H&B could not, on the facts of this case, have the requisite "reasonable expectation of payment" to support its quantum meruit claim. The only reasonable inference to be drawn from the allegations of the amended complaint is that H&B performed design work in anticipation of a contract for the manufacture of goods that never came to fruition. Consequently, H&B could have no reasonable expectation of payment for the services it provided. *See Aqua Creations USA Inc. v. Hilton Hotels Corp.*, No. 10 Civ. 246(PGG), 2011 WL 1239793, at *8 (S.D.N.Y. Mar. 28, 2011), *aff'd*, 487 Fed. App'x 627 (2d. Cir. 2012); *Metro. Steel Indus. v. Citnalta Constr. Corp.*, 754 N.Y.S.2d 278, 279 (App Div. 2003) (holding that there is "no expectation of payment" where a "plaintiff may have performed preparatory work in anticipation of and to facilitate a successful contract negotiation"). Accordingly, we affirm the district court's dismissal of both H&B's unjust enrichment and quantum meruit claims.

Finally, as to H&B's claim asserting that JC Penney misappropriated its idea, we note that to plausibly state a claim for misappropriation of an idea under New York law, two elements must be established: (1) a legal relationship between the parties, such as a fiduciary relationship, contractual

8

relationship, or quasi-contractual relationship; and (2) the idea must be novel and concrete. *Vantage Point, Inc. v. Parker Bros., Inc.*, 529 F.Supp. 1204, 1216-17 (E.D.N.Y. 1981), *aff'd sub. nom. Vantage Point, Inc. v. Milton Bradley Co.*, 697 F.2d 301 (2d Cir. 1982) (table). As H&B effectively concedes, its misappropriation-of-an-idea claim is wedded to the same fate as its breach-of-contract and quasi-contract claims, since it cannot, in the absence of either a contract or a quasi-contract, allege the requisite legal relationship between it and JC Penney to state a misappropriation claim. Having affirmed the district court's dismissal of H&B's contractual and quasi-contractual claims, we therefore affirm the dismissal of H&B's claim for misappropriation of an idea as well.

We have considered H&B's remaining arguments and find them to be without merit. Accordingly, the judgment of the district court is **AFFIRMED**.[2]

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK

---

[2] Following H&B's filing of its reply brief, JC Penney moved the Court to strike portions of the reply brief that raise "facts not in the record on appeal and which are in fact false." Dkt. No. 49. JC Penney contends that H&B's briefing improperly implies that JC Penney never paid H&B anything for its services, when, in fact, H&B issued invoices for, and JC Penney fully paid for, several units of the light fixture that were installed at a small number of JC Penney locations. The portions of H&B's briefing to which JC Penney objects played no role in our disposition of the appeal. Accordingly, we **DENY AS MOOT** JC Penney's motion to strike.

9