OPINION OF THE COURT
Memorandum.
Ordered that so much of the appeal as is from the decision is dismissed, as no appeal lies from a decision (see UJCA 1702; Greenfield v Tassinari, 8 AD3d 529 [2004]); and it is further ordered that the judgment entered February 8, 2013 is reversed, without costs, and so much of the petition as sought to recover arrears in rent and additional rent, and attorney’s fees is dismissed.
In this holdover proceeding commenced in May 2012, a final judgment was entered awarding landlords possession, and landlords’ claim to recover, among other things, a monetary award for arrears in rent and additional rent for the period of May 2008 through April 2012 in the principal sum of $107,745.81, plus attorney’s fees, pursuant to an alleged renewal lease, was severed for a separate nonjury trial. In 1997, the parties had executed a five-year lease, which had been renewed for an additional five years, and contained a renewal option for the period commencing May 2007 and ending on April 30, 2012. Pursuant thereto, the parties agreed that “renewal shall be upon the same terms, covenants and conditions contained in this Lease . . . except that the total rent reserved for said renewal term shall be agreed upon between the parties in writing, prior to the commencement of said re-extended term.” In the event that the parties could not agree, on or before February 1, 2007, to the rent to be paid for the renewal period, *71 they each would select an appraiser no later than March 1, 2007, these two appraisers would then choose a third appraiser, and, after each appraiser had submitted a written appraisal setting forth his or her decision regarding the fair rental value of the premises for the year May 1, 2007 to April 30, 2008, “the average of all three appraisals [would] be the ‘base rent’ for the year May 1, 2007 to April 30, 2008.” Additionally, the original lease provided for annual increases of rent, after the initial year of the five-year extension, at a rate of six percent. In this proceeding, landlords claim that the original written lease was orally modified and extended for the five-year period commencing May 1, 2007.
At the separate trial of the monetary issues, landlord Joseph LaCarrubba testified that tenant had orally agreed to a five-year extension of the written lease with a monthly rental for the first year, commencing in May 2007, in the sum of $9,742.28, and that, for the remaining four years of the extension, monthly rent would be increased annually by four percent, notwithstanding that the written lease provided that any agreement as to the amount of rent for a renewal period had to be in writing and that, in the event of a renewal, annual increases would be at a rate of six percent. Additionally, he testified that, from May 2007 through April 2008, pursuant to the oral modification, tenant had paid monthly rent in the sum of $9,742.28, plus its share of real estate taxes in the sum of $13,035.08 as additional rent. From May 1, 2008 to January 1, 2009, tenant had continued to pay the sum of $9,742.28. In February 2009, the parties had orally agreed to reduce the monthly rent to $8,000 until such time as tenant’s business improved. Tenant thereafter paid landlords monthly rent in the sum of $8,000 until June 2011. Joseph LaCarrubba further testified that, in July 2011, the parties had orally agreed that the monthly rent, from July 2011 through April 2012, would increase to $10,000, which amount tenant paid until April 2012. Landlords argued that tenant was obligated to pay monthly rent pursuant to the oral modification of the lease agreement, which included increases of four percent each year over and above the $9,742.28 rent agreed upon for the first year of the five-year extension, and that landlords had never agreed to forgive payment of the full amount of tenant’s rental obligations. Tenant raised the defense of statute of frauds, claiming that the alleged oral modification is not enforceable.
Following the trial, the Justice Court found, among other things, that the original lease did not set forth the amount of *72 rent that tenant was to pay during the five-year extension period and that tenant had ratified the oral modification of the lease by paying the rent. The court awarded landlords $94,710.73 in rent arrears, $13,035.08 in unpaid real estate taxes, and reasonable attorney’s fees in the sum of $31,056.25, for a total award in the principal sum of $138,802.06.
On appeal, tenant argues that the alleged oral modification of the written lease is precluded by the written lease itself and, in any event, any alleged five-year oral lease, whether as an extension of the preexisting written lease or as a stand-alone oral agreement, is barred by the statute of frauds. Landlords respond, among other things, that partial performance is an exception to the statute of frauds (General Obligations Law § 5-703 [2]).
One of the core principles of contract law is the requirement of definiteness. Generally, “a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable” (Joseph Martin, Jr., Delicatessen v Schumacher, 52 NY2d 105, 109 [1981]). “This is especially true of the amount to be paid for the . . . lease of real property” (id. at 110; see Tracy v Albany Exch. Co., 7 NY 472 [1852] [as the parties had left the term and rent to be agreed upon at a future time, the covenant was held to be void for uncertainty]).
“Where at the time of agreement the parties have manifested their intent to be bound, a price term may be sufficiently definite if the amount can be determined objectively without the need for new expressions by the parties; a method for reducing uncertainty to certainty might, for example, be found within the agreement or ascertained by reference to an extrinsic event, commercial practice or trade usage” (Cobble Hill Nursing Home v Henry & Warren Corp., 74 NY2d 475, 483 [1989]; see Joseph Martin, Jr., Delicatessen, 52 NY2d at 110).
In Joseph Martin, Jr., Delicatessen (52 NY2d at 110), the Court of Appeals
“identified two ways in which the requirement of definiteness could be satisfied in the absence of an explicit contract term: (1) an agreement could contain a methodology for determining the [missing term] . . . within the four corners of the lease, for a [term] so arrived at would have been the end product of agreement between the parties themselves; or (2) an agreement could invite [ ] recourse *73 to an objective extrinsic event, condition or standard on which the amount was made to depend” (Matter of 166 Mamaroneck Ave. Corp. v 151 E. Post Rd. Corp., 78 NY2d 88, 91-92 [1991] [internal quotation marks omitted]).
In this case, the clause in the original lease providing that the parties were to agree in writing to the rental for this new five-year term leaves the material aspect of rent for future negotiation and is, thus, merely an agreement to agree, which is void for uncertainty and unenforceable (see Joseph Martin, Jr., Delicatessen, 52 NY2d at 110; Tracy v Albany Exch. Co., 7 NY at 472; 410 BPR Corp. v Chmelecki Asset Mgt., Inc., 51 AD3d 715 [2008]; Matter of Seiden v Francis, 184 AD2d 904, 904-905 [1992]; Mur-Mil Caterers v Werner, 166 AD2d 565 [1990]; Ping Lum v Young Women’s Christian Assn., 143 AD2d 498 [1988]). Here, the parties did not agree to the new rent in writing in accordance with the lease prior to the time they were required to do so.
Although, as a second option, the original lease allowed for the parties to select appraisers to calculate the fair rental value of the premises, thereby “invit[ing] recourse to an objective extrinsic event, condition or standard on which the amount was made to depend” (Joseph Martin, Jr., Delicatessen, 52 NY2d at 110), the parties did not seek to have rent calculated pursuant to this method. As the parties neither agreed to the total rent reserved for said renewal term in writing as required by the original lease nor each selected one appraiser no later than March 1, 2007, the rent for the renewal period was never set. Thus, the lease was not modified, but rather, according to its terms, terminated (see 410 BPR Corp., 51 AD3d at 716-717), and the lease could not be revived by an oral agreement (see 61 NY Jur 2d, Statute of Frauds § 11).
To the extent that landlords seek to enforce a stand-alone oral agreement to lease the premises to tenant for five years, the alleged oral agreement was in violation of the statute of frauds (see General Obligations Law § 5-703 [2]; Rosen v 250 W. 50 St. Corp., 296 NY 567 [1946]; 410 BPR Corp., 51 AD3d at 716-717).
Although landlords rely upon the doctrine of part performance as an exception to the statute of frauds, “[p]art performance by the party seeking to enforce the contract may be sufficient in some circumstances to overcome the statute of frauds, but only in an action for specific performance” (Sparks Assoc., *74 LLC v North Hills Holding Co. II, LLC, 94 AD3d 864, 865 [2012] [citations omitted]). As this is a summary proceeding, landlords cannot rely on the doctrine of part performance to defeat the statute of frauds defense (see Zito v County of Suffolk, 106 AD3d 814, 815-816 [2013]; Stainless Broadcasting Co. v Clear Channel Broadcasting Licenses, L.P., 58 AD3d 1010, 1012 [2009]).
In view of the foregoing, we need not pass upon any other issues raised on appeal.
Accordingly, the judgment entered February 8, 2013 is reversed and so much of the petition as sought to recover arrears in rent and additional rent, and attorney’s fees is dismissed.
Tolbert and Garguilo, JJ., concur; Iannacci, J.P., taking no part.