**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| In re: READ-RITE CORPORATION, | No. 07-16677 |
| Debtor. | D.C. No. CV-06-04173-SC |
| HITACHI GLOBAL STORAGE TECHNOLOGIES NETHERLANDS B.V.; HITACHI, LTD., | MEMORANDUM[*] |
| Appellants, | |
| v. | |
| READ-RITE CORPORATION; WESTERN DIGITAL CORPORATION; WESTERN DIGITAL (FREMONT), LLC, | |
| Appellees. | |

Appeal from the United States District Court
for the Northern District of California
Samuel Conti, District Judge, Presiding

Submitted August 9, 2010[**]
San Francisco, California

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by 9th Cir. R. 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

Before:  GRABER, CALLAHAN, and BEA, Circuit Judges.

Hitachi Global Storage Technologies Netherlands B.V. and Hitachi, Ltd. (collectively, "Hitachi") appeal from the district court's affirmance of the bankruptcy court's judgment.  We have jurisdiction under 28 U.S.C. § 158(d).  The issues on appeal are whether Hitachi entered into a patent licensing agreement with the debtor, Read-Rite Corporation ("Read-Rite"), and, if so, whether it preserved its rights under the agreement by its belated election under 11 U.S.C. § 365(n).  We affirm.

Hitachi's claims arise from a licensing agreement between IBM and Read-Rite.  The agreement allowed for mutual use of patents and provided that if one company transferred or sold a product line covered by the agreement, the other company would enter into a similar licensing agreement with the transferee.  IBM sold its hard disk drive product line to Hitachi, obligating Read-Rite to enter into a new agreement.  IBM drafted a Hitachi–Read-Rite agreement and negotiated to have it approved and executed.  However, by the time the agreement was negotiated, Read-Rite was on the verge of bankruptcy and declined to approve and execute the agreement.

During the bankruptcy, Hitachi became a bidder for Read-Rite's assets and was added to the service list for all proceedings.  The bankruptcy trustee filed a list

of Read-Rite's licensing agreements that it was seeking to reject, including the IBM–Read-Rite agreement, but not the disputed Hitachi–Read-Rite agreement. The bankruptcy court set a deadline for parties to the rejected agreements to elect to retain their rights under § 365(n). More than a year after the deadline, IBM and Hitachi sought to retain their rights.

The bankruptcy court held a bench trial and determined that Hitachi and Read-Rite did not enter into a binding agreement. Further, the bankruptcy court held that, even if the agreement were binding, Hitachi relinquished its rights by failing to make a timely election under § 365(n). The district court affirmed.

"In an appeal from a bankruptcy court, we review the bankruptcy court's decision independently, without deference to the district court." *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 940 (9th Cir. 2007). We review the bankruptcy court's conclusions of law de novo and its factual findings for clear error. *Id.*

The first issue is whether there was a binding agreement between Hitachi and Read-Rite. The evidence supports the bankruptcy court's determination that the parties intended to require execution before the Hitachi–Read-Rite agreement would become binding, and that the parties never executed the agreement; thus, the

agreement never became binding under New York law.[1]  *See R.G. Group, Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 74 (2d Cir. 1984) ("[I]f parties do not intend to be bound by an agreement until it is in writing and signed, then there is no contract until that event occurs.").  The agreement explicitly required execution, and the actions of the parties' counsel indicated their understanding that the agreement needed to be authorized and signed by company executives.  Neither party acted under the terms of the agreement and, contrary to Hitachi's contention, there were issues that Read-Rite could negotiate prior to signing the agreement.  Moreover, patent licensing agreements are ordinarily written and executed.  *See Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1986) (listing factors used under New York law to determine whether parties intended to be bound absent execution of an agreement).

Hitachi's contention that the signing requirement was a mere formality fails because the parties acted as if signing mattered, and the cases Hitachi relies upon involve agreements where the parties specifically did not intend to require signing. *See, e.g., Mun. Consultants & Publishers, Inc. v. Town of Ramapo*, 390 N.E.2d 1143, 1145 (N.Y. 1979) ("There was no understanding or agreement that the contract would not be binding until both parties signed it . . . .").  Moreover,

---

[1]  The parties agree that New York law governs.

Hitachi fails to provide authority for finding an implied license or option contract in its favor from the IBM–Read-Rite agreement, to which it was not a party.[2]

Alternatively, even if there were a binding agreement, the bankruptcy court properly concluded that Hitachi relinquished its rights by waiting more than a year after the § 365(n) deadline to assert its rights. Hitachi was on notice that the bankruptcy trustee was rejecting the IBM–Read-Rite agreement and that the trustee did not believe there was an existing Hitachi–Read-Rite agreement. Hitachi has not shown that its failure to act was due to excusable neglect. *Cf.* Bankr. R. 9006(b)(1) (allowing the bankruptcy court to enlarge the time for a party to act after a deadline "where the failure to act was the result of excusable neglect").

For the foregoing reasons, the bankruptcy court properly concluded that there was no binding agreement between Read-Rite and Hitachi, and even if there were, Hitachi failed to preserve its rights under § 365(n).

**AFFIRMED**.

---

[2] Hitachi does not contend, at least not "specifically and distinctly," that it was an intended third-party beneficiary of the IBM–Read-Rite agreement; thus, this argument is waived. *Laboa v. Calderon*, 224 F.3d 972, 981 n.6 (9th Cir. 2000). In any event, this argument would be to no avail because Hitachi relinquished any rights it had in the IBM–Read-Rite agreement, as set forth below.