**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-4090
_____

MOSAID TECHNOLOGIES, INC.

v.

LSI CORPORATION; AGERE SYSTEMS, LLC


LSI CORPORATION; AGERE SYSTEMS, LLC,
                                    Counterclaim-Plaintiffs
            v.

        MOSAID TECHNOLOGIES, INC.;
    LENOVO (UNITED STATES), INC.;
        LENOVO GROUP, LTD.;
    LENOVO (SINGAPORE) PTE. LTD.,
                                Counterclaim-Defendants


        LENOVO (SINGAPORE) PTE. LTD.,
                                Counterclaim-Plaintiff
            v.

LSI CORPORATION; AGERE SYSTEMS, LLC,
                                Counterclaim-Defendants


        LSI Corporation; Agere Systems, LLC,
                                Appellants

_____

On Appeal from the United States District Court
for the District of Delaware
(D.C. Civil Action No. 1-10-cv-00192)
District Judge:  Honorable Richard G. Andrews
_____

Submitted under Third Circuit LAR 34.1(a)
on October 6, 2015

Before:  SHWARTZ, KRAUSE, AND GREENBERG, Circuit Judges.

(Opinion filed: October 30, 2015)

_____

OPINION*

_____

KRAUSE, Circuit Judge.

Before this Court is an appeal by LSI Corporation and Agere Systems, Inc.

("LSI/Agere") of the District Court's grant of summary judgment in favor of Lenovo

(United States), Inc., Lenovo Group, Ltd., and Lenovo (Singapore) Pte., Ltd.

(collectively, "Lenovo").  For the reasons set forth below, we will affirm.

**I. Background**

We write for the parties and therefore provide background only as relevant to the

issues on appeal.  In 2007, LSI/Agere entered into a Patent Assignment Agreement (the

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

2

"2007 PAA") assigning certain of its patents (the "Assigned Patents") to Plaintiff Mosaid, which is not a party to this appeal. In that agreement, LSI/Agere included Lenovo in a list of entities LSI/Agere warranted had no rights in the Assigned Patents. In June 2007, Mosaid approached Lenovo about licensing the Assigned Patents. Lenovo, however, responded that it already had been licensed the Assigned Patents under any one of five Patent License Agreements (the "PLAs") executed between LSI/Agere and IBM because IBM had divested its computing division to Lenovo. Although the precise language varies, each of these PLAs contains a provision specifying that one party, upon request by the other party and under specified terms and conditions, will license the divested entities of the other party (the "Divested Entities Provisions").

In light of this information, Mosaid proceeded to file suit against LSI/Agere, alleging LSI/Agere breached an express warranty and its contract with Mosaid when it included Lenovo in the list of entities with no rights in the Assigned Patents.[1] In its answer, LSI/Agere denied Mosaid's claims and sought declaratory judgments that it neither breached an express warranty to Mosaid nor its contract with Mosaid. LSI/Agere also added Lenovo as a Counterclaim-Defendant, seeking a declaratory judgment that the PLAs did not grant Lenovo rights to any patents. In response, Lenovo asserted it had

---

[1] Mosaid also claimed that LSI/Agere improperly included another company, Matsushita, in this list. The District Court granted partial summary judgment to LSI/Agere on this claim, and neither Lenovo nor LSI/Agere raises any arguments as to this claim on appeal.

licenses to the Assigned Patents and counterclaimed for specific performance. After limited discovery, the parties filed cross-motions for summary judgment.

On July 20, 2012, the Magistrate Judge issued a Report and Recommendation on the parties' summary judgment motions. The Magistrate Judge concluded there was no signed writing that could provide the basis for a licensing agreement between Lenovo and LSI/Agere and therefore applied the so-called *Winston* factors to determine whether a binding contract had been formed under New York law in the absence of a signed writing. *See Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985).[2] After considering the *Winston* factors, the Magistrate Judge determined that no reasonable jury could find that the 1995, 1999, or 2005 PLAs between IBM and LSI/Agere formed a contract between Lenovo and LSI/Agere but that there were questions of fact as to the 2000 and 2002 PLAs. The Magistrate Judge therefore recommended that the District Court grant partial summary judgment in favor of LSI/Agere on the 1995, 1999, and 2005 PLAs and otherwise deny the parties' summary judgment motions.

On March 29, 2013, the District Court issued a Memorandum Opinion and Order rejecting the Magistrate's recommendations as to the 1995, 1999, 2000, and 2002 PLAs, concluding that those PLAs did grant licensing rights to Lenovo.[3] Specifically, the

---

[2] The PLAs provide, and the parties do not dispute, that New York law applies.

[3] As to the 2005 PLA, the Magistrate Judge found that it could not have granted licensing rights to Lenovo because its Divested Entities Provision specifically applies only to entities divested by one of the parties after 2006 and the Lenovo divestiture transaction occurred in 2005. The District Court granted partial summary judgment to

4

District Court held that there was no need to consider the *Winston* factors because the PLAs themselves constituted signed writings that properly formed the basis for licensing agreements between Lenovo and LSI/Agere. Concluding that the PLAs unambiguously provided for "automatic license transfer[s]," the District Court granted partial summary judgment in favor of Mosaid and Lenovo. J.A. 11. Following the Order, however, LSI/Agere settled its dispute with Mosaid, and the District Court entered a Stipulation and Order of Dismissal of all the claims between those two parties. LSI/Agere now appeals only the grant of partial summary judgment in favor of Lenovo.

## II. Jurisdiction and Standard of Review

Before addressing the merits of this appeal, we must resolve a threshold jurisdictional challenge raised by Lenovo, specifically whether the settlement between LSI/Agere and Mosaid as to the Assigned Patents has mooted this appeal. *See Am. Bird Conservancy v. Kempthorne*, 559 F.3d 184, 188 (3d Cir. 2009) (addressing mootness as a "threshold matter" before turning to the merits).

The central question in determining whether a case has become moot is "whether the decision of the dispute continues to be justified by sufficient prospect that it will have impact on the parties." *Ruocchio v. United Transp. Union, Local 60*, 181 F.3d 376, 383 (3d Cir. 1999) (citing 13A Charles A. Wright & Arthur R. Miller et al., *Federal Practice and Procedure* § 3533.1 (3d ed. 1984)). An appeal should be dismissed as moot when

LSI/Agere on this point, and neither party has raised any argument on appeal as to the 2005 PLA.

the court "cannot grant any effectual relief whatever in favor of the appellant." *Calderon v. Moore,* 518 U.S. 149, 150 (1996) (internal quotation marks omitted). The burden of demonstrating to the court that a decision in the case would not have an impact on the parties lies with the party claiming mootness. *See Firefighters Local Union No. 1784 v. Stotts*, 467 U.S. 561, 569-70 (1984).

Lenovo argues the appeal is moot because LSI/Agere settled with Mosaid, "no longer owns any interest in the Assigned Patents," and "has made no showing that there are remaining patents that would be impacted by a decision regarding the various license agreements at issue." Appellee's Br. 25-26. The first problem with this argument is that the PLAs are cross-licenses to "every patent" issued to the parties, with specified exceptions, and thus, from the outset, LSI/Agere sought a declaration from the District Court that Lenovo has no rights in *any* patent under the PLAs. Indeed, the parties appear to be in agreement that the 1999 PLA *exclusively* implicates patents other than the Assigned Patents. To drive the point home, LSI/Agere has previously asserted patents other than the Assigned Patents against Lenovo, and in its representations to this Court, Lenovo has declined to "unequivocally state" it does not have a license by operation of the PLAs to any patents other than the Assigned Patents. Letter Mem. for Appellees 4-5.

Even as to the Assigned Patents, moreover, Lenovo cannot carry its burden of establishing that LSI/Agere has no rights that could be affected by a decision in the case. Although LSI/Agere has settled its dispute with Mosaid, it may have nevertheless retained some rights in the Assigned Patents. For example, if LSI/Agere retained a right

6

to royalties flowing from Mosaid's licensing of the Assigned Patents, LSI/Agere may have an interest in whether Lenovo already possesses licensing rights in the Assigned Patents through the PLAs. Put another way, if we determine Lenovo does not have those rights, Mosaid may be able to license the Assigned Patents to Lenovo, which, depending on the terms of the settlement agreement, may affect Mosaid's obligations to LSI/Agere. For this reason, Lenovo has not carried its burden as the party claiming mootness, even with respect to the Assigned Patents.

Having concluded this appeal is not moot, we will exercise jurisdiction under 28 U.S.C. § 1291. We undertake plenary review of a grant of summary judgment, *E.T. Browne Drug Co. v. Cococare Prods., Inc.*, 538 F.3d 185, 191 (3d Cir. 2008), and will affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P 56(a).

**III. Discussion**

LSI/Agere asks us to adopt the Magistrate Judge's position that the PLAs are merely agreements to agree in the future as to the terms of a licensing agreement and that there is no signed writing reflecting that such an agreement was ever completed. Under those circumstances, LSI/Agere contends, we must apply the *Winston* factors and should conclude, like the Magistrate Judge did, that no agreement was ever finalized. Lenovo, on the other hand, asserts that the PLAs are themselves complete agreements to grant licensing rights to Lenovo, with no requirement that an additional writing be executed. Lenovo contends that it received a license under the PLAs when it satisfied certain

7

conditions precedent specified in the Divested Entities Provisions.[4] We conclude that Lenovo has the better of the argument.

We first address LSI/Agere's argument that we should apply the *Winston* factors in the present case to "determine whether the parties intended to be bound in the absence of a document executed by both sides." *Winston*, 777 F.2d at 80. LSI/Agere contends that because there is no "free-standing license" between LSI/Agere and Lenovo separate from the PLAs, there is no signed writing we can properly interpret to determine whether there is a licensing agreement between LSI/Agere and Lenovo. Appellant's Br. 22.

It is not entirely clear whether LSI/Agere's argument turns on the fact that the alleged license agreement is not free-standing, that Lenovo itself is not a signatory, or both, but neither argument passes muster. First, there is no legal basis for the proposition that a licensing agreement must be free-standing from any other agreement. On the contrary, New York law has long recognized that a patent license agreement may be entered into as part of a larger agreement. *See, e.g.*, *Remington Rand v. Int'l Bus. Mach. Corp.*, 3 N.Y.S.2d 515, 517 (Sup. Ct. 1937) (recognizing possibility of contract

---

[4] In its brief, LSI/Agere does not contest that Lenovo satisfied these conditions precedent—a concession supported by the record. The Divested Entities Provisions require that (1) IBM divest part of its business to a third party, (2) the business be worth more than $100,000,000, except under the 1999 PLA, in which case it must be worth more than $25,000,000, and (3) IBM make a joint request with the third party to LSI/Agere within 60 days of the divestiture. Under the 2000 and 2002 PLAs, the divestiture was required to take place before October 1, 2005. In accordance with these terms, the record reflects that on April 30, 2005, IBM divested its personal computing division, which was valued at more than $100,000,000, to Lenovo, and that in letters sent

containing both a settlement agreement and a cross-licensing agreement).  Second, as to whether Lenovo can claim a license under a contract to which it was not a signatory, it is a well-established principle of contract law that parties may contract to provide a benefit to a third party.  *See, e.g., Septembertide Pub., B.V. v. Stein & Day, Inc.*, 884 F.2d 675, 679-80 (2d Cir. 1989) (applying New York law of third-party beneficiaries in the context of licensing agreements); *see also* 13 Williston on Contracts § 37:1 (4th ed. 2015).

LSI/Agere's reliance on *Read-Rite*, which applied the *Winston* factors in a case involving a similar IBM PLA, is misplaced.  *See In re Read-Rite Corp.*, No. CV-06-04173 SC, 2007 WL 2318901, at *2 (N.D. Cal. Aug. 13, 2007) *aff'd,* 393 F. App'x 535 (9th Cir. 2010).  Even putting aside the case's non-precedential status, in *Read-Rite*, the parties stipulated that they "needed to execute a licensing agreement," so the court did not consider whether the PLA itself could constitute an enforceable licensing agreement. *Id*. at *1.  *Read-Rite* thus offers no basis for deviating from applicable New York precedent by analyzing the *Winston* factors.

Having determined that the *Winston* factors do not apply because there are signed writings, we now turn to the plain language of those writings to determine whether the PLAs between LSI/Agere and IBM gave rise to licensing agreements between LSI/Agere and Lenovo.  Under New York law, "a written agreement that is complete, clear and unambiguous on its face must be enforced according to the plain meaning of its terms."

---

within 60 days of the divestiture, IBM and Lenovo requested that LSI/Agere license Lenovo.

*Greenfield v. Philles Records, Inc.*, 780 N.E.2d 166, 170 (N.Y. 2002). LSI/Agere argues there is no enforceable licensing agreement between LSI/Agere and Lenovo on three grounds.

First, LSI/Agere contends that the PLAs do not contain all the terms of the licensing agreements to be granted to divested entities. Under New York law, a contract that fails to include all material terms may be an unenforceable "agreement to agree." *Joseph Martin, Jr. Delicatessen, Inc. v. Schumacher*, 417 N.E.2d 541, 543 (N.Y. 1981) (citations omitted). Such an agreement is usually unenforceable because it "requires further expressions by the parties and therefore fails to 'reduc[e] uncertainty to certainty.'" *Clifford R. Gray, Inc. v. LeChase Const. Servs., LLC*, 819 N.Y.S.2d 182, 185 (App. Div. 2006) (quoting *Cobble Hill Nursing Home v. Henry & Warren Corp.*, 548 N.E.2d 203, 206 (N.Y. 1989)) (alteration in original).

We conclude that the PLAs do not require further expressions of the parties and leave open no material terms of a licensing agreement between LSI/Agere and Lenovo because each of the Divested Entities Provisions states that the terms of the existing license apply, except as otherwise specifically provided. The 1995 Divested Entities Provision provides that each party agrees to grant licenses to the other party's divested entities "under terms and conditions similar to those contained herein." J.A. 507. Similarly, the 1999 Divested Entities Provision provides that the parties "agree[] to grant a royalty-free license (under the same terms as the license granted . . . herein)." J.A. 287. The 2000 and 2002 Divested Entities Provisions provide that the parties "will license"

10

"two divested entities" "in accordance with the terms and conditions of" their respective PLAs, which in turn incorporate the terms and conditions of the 1995 PLA. J.A. 39, 41-42. Each Divested Entities Provision also enumerates specific changes to be made to the terms and conditions of the existing licenses.

LSI/Agere makes much of the fact that the 1995 Divested Entities Provision states that the terms and conditions of the new licensing agreements must be "similar" to the terms of the 1995 PLA. In this context, however, the use of the word "similar" reflects the drafters' acknowledgment of the changes made to the terms and conditions of the 1995 PLA by the Divested Entities Provision itself. Furthermore, in its brief LSI/Agere does no more than speculate that the parties might have wanted to negotiate additional terms without demonstrating that the parties in fact failed to address any material term. Perhaps for that reason, at oral argument on the parties' motions for summary judgment, LSI/Agere acknowledged that the additional writing it claims is required need only have recited the terms of an existing PLA and changed the party names.

Second, LSI/Agere argues the PLAs alone cannot grant Lenovo a license because each of the PLAs expressly requires that an additional writing be executed before the licensing agreements contemplated in the Divested Entities Provisions go into effect. In support, LSI/Agere points to three places in the 1995 PLA, which is incorporated into the 2000 and 2002 PLAs, and one provision in the 1999 PLA: (1) the signature page of the 1995 PLA, which provides, "THIS AGREEMENT DOES NOT BIND OR OBLIGATE EITHER PARTY IN ANY MANNER UNLESS DULY EXECUTED BY

11

AUTHORIZED REPRESENTATIVES OF EACH PARTY," J.A. 507; (2) a provision in the 1995 PLA stating that the parties do not intend for the rights in the PLA to extend to entities other than related companies "without the other parties' express written consent," J.A. 465; (3) a provision in the 1995 PLA stating the parties do not intend to be bound "other than as expressly provided herein or in a [signed] writing," J.A. 170; and (4) a provision in the 1999 PLA stating that the agreement "shall not be binding upon the parties until it has been signed hereinbelow," J.A. 291. Noting that each Divested Entities Provision states that the license will be granted on the same or similar "terms and conditions" as the existing PLA, LSI/Agere contends that the language in these provisions requires the parties to create and execute new licensing agreements effecting the transfer of licensing rights to divested entities under the Divested Entities Provisions.

We perceive no such requirement in the plain language of the agreement, nor under New York law. Where a contract is between sophisticated commercial entities, courts should interpret the contract to "realize the reasonable expectations of the ordinary businessperson." *Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 662 (2d Cir. 1994). An ordinary business person would interpret the language on the signature page of the 1995 PLA and in the similar provision of the 1999 PLA to require simply that the existing written licenses be signed, not to require that an additional writing be drafted, in order for the otherwise complete licensing agreements contemplated by the PLAs to go into effect. As to the other two provisions in the 1995 PLA, both merely require that any agreement as to rights *other than those granted by the PLA* be in writing. At issue here,

12

however, are licensing rights expressly granted by the PLAs, which therefore do not implicate either of these provisions.

Finally, LSI/Agere posits that an additional writing was required by the PLAs, based upon the alleged extrinsic evidence of the "parties' course of conduct," Appellant's Br. 32, in the form of the June 23, 2005, letters in which IBM and Lenovo, in accordance with the requirements of the Divested Entities Provisions, requested a "new patent cross license agreement" from LSI/Agere, J.A. 180, 184. This argument is also unavailing. We do not look beyond the four corners of the contract unless the language therein is ambiguous. *See Greenfield*, 780 N.E.2d at 170. For this reason, "extrinsic and parol evidence is not admissible to create an ambiguity in a written agreement which is complete and clear and unambiguous upon its face." *S. Rd. Assocs., LLC v. Int'l Bus. Machs. Corp.*, 826 N.E.2d 806, 809 (N.Y. 2005). Because the language of the PLAs is unambiguous and clearly reflects that an additional writing is not required, we will not consider IBM's letters as supposed extrinsic evidence of a contrary intent. Even were we to take IBM's letters into account, however, they would not alter our conclusion, as the letters show nothing more than that IBM's lawyer prudently believed that an additional writing, although not required by the PLAs, "could not have hurt." J.A. 14.[5]

For these reasons, we will affirm the judgment of the District Court.

---

[5] LSI/Agere also argues that any license afforded Lenovo is "null and void under the New York Statute of Frauds" absent a signed writing. Appellant's Br. 56. We reject this argument because, as discussed above, the PLAs constitute enforceable, signed writings.