MARINAS OF THE FUTURE, INC., Doing Business as WORLD'S FAIR MARINA, Respondent, v CITY OF NEW YORK et al., Appellants.

First Department, June 8, 1982

APPEARANCES OF COUNSEL

*Joan E. Handler* of counsel (*Francis F. Caputo* with her on the brief; *Frederick A. O. Schwarz, Jr., Corporation Counsel,* attorney), for appellants.

*Frederick S. Gold* of counsel (*Donald S. Snider* and *Jerome Kowalski* with him on the brief; *Finley, Kumble, Wagner, Heine, Underberg & Casey,* attorneys), for respondent.

OPINION OF THE COURT

FEIN, J.

Plaintiff Marinas of the Future, Inc. (Marinas) seeks a declaration of its right to continue to occupy and operate a marina on public park property at the Flushing Bay Boat Basin (Basin), pursuant to its purported exercise of an option under a licensing agreement with defendants, and damages for defendants' alleged violation of that agreement. The order appealed from granted plaintiff a prelimi-

nary injunction restraining defendants from commencing summary proceedings or taking any other steps to oust plaintiff from possession of the marina premises during the pendency of this action. It also preliminarily enjoined defendants from commencing legal proceedings to declare the agreement terminated or void, or from interfering with or impeding in any way plaintiff's operation of the marina pending determination of this action. The order also denied defendants' cross motion for summary judgment dismissing the complaint and awarding them possession of the premises.

The Basin is located within Flushing Meadow Park, public parkland held by defendant City of New York (City). Pursuant to State enabling legislation (L 1960, ch 428), the City leased portions of the park, including the Basin, to the New York World's Fair 1964-1965 Corporation (Fair Corporation) for the period January 1, 1962 to January 1, 1966, for the purpose of conducting a world exposition. By resolution dated January 10, 1963 the City's Board of Estimate authorized defendant Department of Parks and Recreation (Department), through its defendant commissioner, to enter into an agreement with plaintiff, for the period of the leasing to the Fair Corporation and "for. 15 years thereafter", for the "construction, operation and maintenance of a first-class marina" at that site. The Corporation Counsel had termed this prospective agreement a "revocable license". The agreement was signed on January. 23, 1963.

It is undisputed that the agreement afforded plaintiff only a "right to occupy and use" the premises, a "revocable license" to operate a marina. No State authorization for the alienation of the Basin premises to plaintiff has ever been obtained. For the first three years of the agreement, until the January 1, 1966 expiration of the Fair Corporation's lease of the park, that Corporation and the City jointly supervised plaintiff's operation of the marina. Thereafter plaintiff occupied the site exclusively as the licensee of the Department.

Under the agreement, the Department retained the authority to supervise all phases of Marinas' operation and to approve any improvements at the site. Marinas was to

construct and maintain the facility at its own expense. Paragraph 21 of the agreement provided that Marinas should pay the Department a monthly licensing fee of 5% of its gross receipts plus 2% of the receipts derived by Marinas from the sale of any boats or motors directly from the facility. Paragraph 20 of the agreement gave Marinas the right to collect certain fees and charges from the public for the use of the facilities, with any increase in charges subject to the prior approval of the Department.

Paragraph 2 of the agreement provided: "The term of this Agreement shall commence on the first day of January, 1963, and shall continue * * * until January 1, 1966, and shall thereafter continue for a period of fifteen (15) years * * * unless sooner terminated as hereinafter provided. Operator shall have the option, however, by written notice to the City given one (1) year prior to the expiration of this Agreement to renew the term of this Agreement for a renewal period of ten (10) years commencing on January 1, 1981 and thereafter, by written notice to the City given one (1) year prior to the expiration of the first renewal period, to renew this Agreement for a further renewal period of ten (10) years commencing on January 1, 1991, *both such renewals, however, to be upon such terms and conditions, including percentages of gross receipts to be paid to the City, as may be mutually acceptable to Operator and the City.*" (Emphasis supplied.) The Department also reserved the right to terminate the agreement if the property were condemned by the State or Federal Government. Further, the commissioner retained the right to terminate the agreement upon 30 days' written notice to plaintiff, if in his sole judgment such termination were necessary by operation of law, or the premises were required for a paramount park purpose. If termination occurred under such conditions prior to December 31, 1980, plaintiff would be entitled to recover a portion of its investment. Additionally, the Department could terminate the agreement if plaintiff failed to remedy any breach of its obligations under the agreement within 30 days after receipt of written notification. The agreement also provided that the Department's acceptance of any fees or other payments

from plaintiff in no way constituted a waiver of its rights to terminate the agreement.

During the initial term of the agreement Marinas made various expenditures and leased a portion of the premises for a restaurant to the P.P.P. Restaurant Corporation (P.P.P.) until the year 2000.

By letter dated June 15, 1979 the Department declined to approve the purported exercise of the option to renew a lease agreement between plaintiff and P.P.P. for an additional 10 years. In pertinent part that letter reads as follows:

*"Presumably, the exercise of this option is contingent on the successful negotiation of your company with the Department for an extension of your license agreement for an additional ten years at the Worlds Fair Marina and on the Department approval of P.P.P. Restaurant Corporation as a sublicensee.*

"Unfortunately, a review of Department records has failed to disclose any modifications of the January 23, 1963 license agreement approving such an option agreement or P.P.P. Restaurant Corporation as a sublicensee. Would you kindly send us any documentation you may have regarding this matter. Such material may prove helpful in resolving any differences regarding each party's obligations under the license agreement.

"As you are aware, the Mayor's executive order no. 9 requires that all Department concessions must be competitively bid unless a waiver is obtained from the Mayor's Concession Review Committee. In the absence of an agreement showing a Department obligation to honor such an option and the prior approval of the Mayor's Concession Review Committee, the Department is legally bound to disapprove your arrangement with P.P.P. Restaurant Corporation. In any event, we would have to seek such Committee approval before we could even extend your term." (Emphasis supplied.)

On November 27, 1979 Marinas, by letter of that date, sought to exercise its option to renew the term of the agreement for a period of 10 years commencing January 1, 1981. The Department did not specifically reply to that

letter. However, on December 11, 1979, in a letter approving certain increases in dockage rates, the Department stated "this approval should not be construed as a blanket approval of your concession."

During 1980 the Department advised Marinas on several occasions that Marinas was not maintaining the premises pursuant to the agreement. In December, 1980 Department personnel sought to meet with Marinas' president to negotiate the renewal of Marinas' occupancy and operation on the site. Finally, on January 9, 1981, it was agreed that plaintiff would submit a written proposal detailing its offers for additional improvements and an increase in percentage of gross receipts payable to the Department during the renewal period. A letter from the Department dated January 16, 1981 stated that Marinas would be "permitted to continue operation * * * under the terms of [its] expired agreement * * * until such time [as] it has been determined whether or not the City and Marinas of the Future, Inc. can enter into a mutually agreeable renewal license." This permission was specifically granted without prejudice to the City's "right to terminate [Marinas'] concession in the event [the parties] cannot enter into such mutually acceptable agreement."

Plaintiff disputed the necessity of such further agreement. In a letter dated February 27, 1981 Marinas' president stated that the licensee had timely "exercised the automatic option to renew our license agreement" for another 10 years, that the agreement had never expired, and that Marinas held a license to operate the marina under the agreement until 1990. Marinas maintained it was under no obligation to negotiate new terms for the renewal period, that it had a right to and would continue in occupancy under the original terms of the license contained in the agreement, and that it would pay the Department a higher fee for use of the premises only if the Department agreed to permit plaintiff to increase its dockage charges to afford a greater profit.

During this period the Department was reassessing its obligations in the light of the recent Court of Appeals decision in *Martin Delicatessen v Schumacher* (52 NY2d 105). By letter dated February 26, 1981 the Department

informed Marinas that according to the holding in that case, the renewal provisions of the agreement were unenforceable as a matter of law. The Department further informed Marinas that since it had no duty to negotiate or grant a new term of occupancy at the Basin, it elected not to renew Marinas' license because of both the public policy favoring competitive bidding for public concessions and Marinas' failure to meet its contractual obligations in the operation of the facilities. The Department did offer to allow Marinas to remain at the Basin on an interim basis terminable on 30 days' written notice, but not later than December 31, 1981, pending the selection of a new marina operator.

Although plaintiff remained on the premises, it refused to enter into any interim permit agreement with the Department. On March 25, 1981 the Department demanded that Marinas pay its license fees for the first three months of 1981. Marinas did so on April 14. On May 28 the Department "formally" advised plaintiff that since the agreement had expired without reaching any interim permit agreement or procuring any other authorization for operation at the site, "your license to operate the Marina is terminated and your post-expiration operation constitutes a wrongful occupation and use of park property; and that unless you quit and vacate the World's Fair Marina within 5 days, the Department will commence legal action to regain possession of its property."

Thereafter, on or about June 5, 1981, plaintiff commenced this action seeking a declaration of its right to remain on the premises under the agreement, an injunction restraining defendants from evicting it from the site, an order directing defendants specifically to perform their contract obligations under the agreement, and $1 million damages allegedly caused by the City's failure to dredge the marina waters and by its disposal of sewage into those waters. No notice of claim was filed prior to commencement of the action. Plaintiff simultaneously moved for a preliminary injunction restraining defendants, during the pendency of this action, from commencing any action or proceeding either to oust plaintiff from the premises or to declare the agreement terminated or null and void, and

from impeding or interfering with plaintiff's operation and occupancy of the marina in any other way. Defendants opposed plaintiff's application for preliminary relief and cross-moved for summary judgment dismissing the complaint and granting defendants' counterclaim, including a declaration that the agreement terminated on December 31, 1980, and a direction that plaintiff surrender the premises to defendants.

Special Term found "a sharp dispute here as to the intention of the parties concerning this renewal provision." The issue was whether the "renewal term constituted a grant * * * of two consecutive, irrevocable, unilateral options to renew". There was also found to be an issue whether defendants, by accepting license fees, approving increases in charges and directing improvements, had given Marinas cause to believe it had validly exercised its renewal option, with the result that defendants' disavowal of the efficacy of the 1963 Board of Estimate resolution to grant Marinas an absolute option to use and occupy public parkland did not automatically void Marinas' rights. Special Term granted plaintiff a preliminary injunction, finding that the balance of equities was in its favor and required maintenance of the *status quo* tailored so as to preserve the rights of the parties without prejudice. Because of these issues of fact, particularly with respect to the intention of the parties, defendants' cross motion for summary judgment was denied.

The first issue is whether plaintiff's purported exercise of the option created an enforceable contract, as contended by Marinas. Paragraph 2 of the agreement, respecting the options, provides: "both such renewals, however, to be upon such terms and conditions, including percentages of gross receipts to be paid to the City, as may be mutually acceptable to [Marinas] and the City." Nowhere in the agreement are any indicia, methodology or standards set forth for fixing the terms and conditions applicable to any renewal. The terms of any renewal are by express language made entirely dependent upon negotiations between the parties. Since the time Marinas originally notified the Department of its desire to renew the agreement, the negotiations have been entirely unsuccessful. It is undisputed that there has

been no agreement on terms and conditions. Plaintiff's present position appears to be that the issue has been resolved because of its notice and the failure of the Department to come forward with any counterproposal. Plaintiff now asserts that by virtue of its notice the license agreement has been extended for a 10-year period upon the same terms and conditions as previously existed. It asserts, at a minimum, that the question of the parties' intention is a factual issue to be resolved upon a trial, citing *Mallad Constr. Corp. v County Fed. Sav. & Loan Assn.* (32 NY2d 285). However, as that case holds, "The test on summary judgment is whether the issue is one of law or of fact (CPLR 3212, subd. [b]). The courts have declared on countless occasions that it is the responsibility of the court to interpret written instruments (4 Williston, Contracts, § 601, *supra*). The problem of analysis of the instrument is to determine 'what is the intention of the parties as derived from the language employed' (*id.,* § 600, at p. 280). Thus, where a question of intention is determinable by written agreements, the question is one of law, appropriately decided by an appellate court (see *Rentways, Inc. v. O'Neill Milk & Cream Co.,* 308 N.Y. 342, *supra*), or on a motion for summary judgment." (32 NY2d, at p 291.)

As ruled in *Martin Delicatessen v Schumacher* (*supra,* pp 109-110) "a mere agreement to agree, in which a material term is left for future negotiations, is unenforceable (*Willmott v Giarraputo,* 5 NY2d 250, 253 ***)". There the language of the renewal clause was "at annual rentals to be agreed upon" (52 NY2d, at p 108), which the court held to be, in effect, merely an agreement to agree. Here the language is "upon such terms and conditions *** as may be mutually agreeable." Plainly, this is an agreement to agree, unenforceable as such.

Plaintiff's assertion that the option was irrevocable and unilateral is of no aid, in the absence of the financial terms which would govern the contract resulting from the exercise of the option as an acceptance of a continuing offer. (See *Benedict v Pincus,* 191 NY 377; *J.N.A. Realty Corp. v Cross Bay Chelsea,* 42 NY2d 392.)

Plaintiff asserts defendants should be estopped because plaintiff invested $3 million. However, the agreement pro-

vides for amortization ending December 31, 1980, the end of the original term. As noted, the lease Marinas signed with P.P.P. was never approved by defendants.

Marinas further asserts that it had a right to believe that the Department had agreed to renewal because of the increase in docking fees and demand for improvements in December, 1979. However, the December, 1979 approval of the docking fees was accompanied by a reminder that approval should not be construed as blanket approval of the concession. The demands for repairs, all made prior to December 31, 1980, were merely an insistence on the fulfillment of contractual obligations.

There are no triable issues of fact. All necessary facts are before the court, demonstrating that the provisions respecting renewal constitute merely an agreement to agree, too indefinite to be judicially enforceable. Hence, defendants are entitled to summary judgment dismissing the first three causes of action, to wit: the first cause of action for a declaration in favor of plaintiff on the validity of the agreement, the second cause of action for an injunction, and the third cause of action for specific performance.

Defendants are also entitled to a declaration that the renewal clause in the agreement is not enforceable, and that they are entitled to possession of the premises.

With respect to the fourth cause of action, sufficient appears to be alleged to assert a claim for money damages for alleged breaches prior to the termination of plaintiff's rights to the premises.

Accordingly, the order of Supreme Court, New York County (PRICE, J.), entered August 5, 1981 should be modified, on the law, to vacate the temporary injunction issued by Special Term, to grant defendants' cross motion for summary judgment dismissing the first three causes of action and to declare that the renewal clauses in the agreement are not enforceable, plaintiff's right to occupy and operate the marina is terminated and defendants are entitled to possession of the premises, and otherwise affirmed, without costs.

KUPFERMAN, J. P., SANDLER, BLOOM and ASCH, JJ., concur.

Order, Supreme Court, New York County, entered on August 5, 1981, unanimously modified, on the law, to vacate the temporary injunction issued by Special Term, to grant defendants' cross motion for summary judgment dismissing the first three causes of action and to declare that the renewal clauses in the agreement are not enforceable, plaintiff's right to occupy and operate the marina is terminated and defendants are entitled to possession of the premises, and otherwise affirmed, without costs and without disbursements.