Provenzano v Orwel (2024 NY Slip Op 51663(U))

[*1]

Provenzano v Orwel

2024 NY Slip Op 51663(U)

Decided on December 10, 2024

Civil Court Of The City Of New York, New York County

Li, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 10, 2024
Civil Court of the City of New York, New York County

Provenzano, Plaintiff,

against
Orwel, Defendant.

Index No. SC-000651-21/NY

Plaintiff: Pro se
Defendant: Pro se

Wendy Changyong Li, J.

I. Background
On June 11, 2021, Plaintiff commenced the instant action against Defendant for money damages in the amount of $10,000 with interest for alleged violations of the New York City's Freelance Isn't Free Act ("FIFA"). On November 14, 2024, this Court conducted an in-person trial where both parties appeared pro se. Plaintiff submitted email communications ("Email Communications") between Plaintiff and Defendant from April 23, 2021 to April 26, 2021 as evidence of Defendant's alleged breach of an oral agreement (Plaintiff's Exhibit I). Defendant submitted an unsigned settlement agreement dated "April, 2021" that he proposed to Plaintiff in April 2021 (Defendant's Exhibit A). The settlement agreement ("Settlement Agreement") had been rejected by Plaintiff. The authenticity of the content of the Email Communications and the Settlement Agreement was not disputed by either party during the trial, and Plaintiff's Exhibit I and Defendant's Exhibit A were admitted into evidence.
The parties allegedly entered into an oral agreement on or about January 2021, where Plaintiff agreed to edit Defendant's doctorate thesis for monetary compensation. Pursuant to the alleged oral agreement, Plaintiff edited Defendant's thesis, for which Defendant paid Plaintiff $2,000 for services performed. Plaintiff claimed that Defendant had breached their alleged oral agreement of January 2021, pursuant to which (1) Plaintiff would be paid $1,000 per week for [*2]the duration of the editing service provided, which ultimately came to a total amount of $7,917; and (2) in the event Defendant were to receive a writing grant for a book deal based on Defendant's thesis, that Plaintiff was to be paid a portion of such grant. Plaintiff also alleged that Defendant had made an additional promise in February 2021 to pay Plaintiff's credit card interest of $125.73 as compensation for Defendant's delay in paying Plaintiff's wages.
As such, Plaintiff contended that because he had only received a partial payment of $2,000 from Defendant, he was entitled to recover the remaining $5,917 pursuant to the alleged oral agreement and an additional $125.73 for Plaintiff's credit card interest. Moreover, Plaintiff alleged that this action was under the scope of FIFA, and that Plaintiff was entitled to double damages because Defendant had violated FIFA for nonpayment and failure to provide Plaintiff with a written agreement.
Defendant opposed the existence of an oral agreement between Plaintiff and Defendant, arguing that the oral agreement was merely an "informal arrangement" between "friends" for Defendant to pay Plaintiff a total of $2,000 for Plaintiff's editing services, and that he had no outstanding payments to be made to Plaintiff. Defendant alleged that the Settlement Agreement, where Defendant offered to pay Plaintiff $5,917 was merely an attempt to prevent Plaintiff from harassing Defendant, and not a reflection of the agreed compensation for services rendered.

II. Discussion
Based on parties' testimony and the admitted exhibits, this Court will address (1) whether there was an enforceable oral agreement between Plaintiff and Defendant for Plaintiff to edit Defendant's thesis for a sum certain, and for Plaintiff to receive a portion of Defendant's writing grant in the event Defendant were to receive one, and for Defendant to pay Plaintiff's credit card interest of $125.73; and (2) whether Plaintiff is entitled to damages under FIFA based on the alleged oral agreement.
A. Breach of an Oral Contract
The New York Statute of Frauds provides that "every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged . . . if such agreement, promise or undertaking . . . [by] its terms is not to be performed within one year from the making thereof" (see New York General Obligations Law 5-701[a][1]). Here, Plaintiff and Defendant allegedly entered into an oral agreement in January 2021, where Plaintiff was to provide Defendant with editing services. Based on the testimony of both parties, it is undisputed that Plaintiff provided Defendant with editing services between January and March 2021, for a period of about eight weeks. The testimonies are corroborated by the evidence. In Plaintiff's email to Defendant on April 23, 2021 at 1:52PM, Plaintiff stated that Plaintiff performed "[eight] week[s] . . . of editing (minus a half day)" (see Exhibit I). Similarly, the Settlement Agreement stated that the agreement was in relation to "editing services performed between January 15 and March 2021 by [Plaintiff]" (see Exhibit A). As the performance in accordance with the alleged oral agreement was completed within one year, the alleged oral contract is not precluded by the Statute of Frauds.
Then it remains for the Court to examine Plaintiff's alleged breach of contract claim. To prevail, Plaintiff must establish "the existence of a contract, [Plaintiff's] performance pursuant to the contract, [Defendant's] breach of his or her contractual obligations, and damages resulting from the breach" (see Harris v Seward Park Housing Corp., 79 AD3d 425, 913 N.Y.S.2d 161 [*3][1st Dept 2010]).
In determining the existence of an enforceable contract, Plaintiff "must establish an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound (22 NY Jur 2d, Contracts §9)" (see Kowalchuk v Stroup, 61 AD3d 118, 121, 873 NYS2d 43 [2009], Kasowitz, Benson, Torres & Friedman, LLP. v. Duane Reade 98 AD3d 403, 950 [1st Dept 2012]). It is well established that "an objective meeting of the minds" and "a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms" (see Matter of Express Indus. & Term. Corp. v New York State DOT 93 NY2d 584, 589, 715 N.E.2d 1050, 693 N.Y.S.2d 857 [1999], Martin Delicatessen v Schumacher 52 NY2d 105, 109). In the instant action, Plaintiff's Exhibit I and Defendant's Exhibit A revealed that it was undisputed that the parties came to an oral "agreement" in January 2021 that Plaintiff was to edit Defendant's doctorate thesis in exchange for monetary compensation. It was undisputed that pursuant to such agreement, Plaintiff delivered Defendant with the promised editing services between January and March 2021. It was also uncontested, based upon the testimony of both parties that Defendant had paid Plaintiff a compensation of $2,000 for the editing services rendered.
However, question of fact remains as to what material terms were agreed upon in the alleged oral agreement of January 2021 regarding the specific amount of monetary compensation that Plaintiff was due to receive upon completion of Plaintiff's editing services. Plaintiff contended that the terms of the oral agreement were such that Plaintiff was to receive $1,000 weekly for the editing work performed. As Plaintiff worked on Defendant's thesis for an "[eight] week period . . . (minus a half day)", Plaintiff alleged that Plaintiff was entitled to a total amount of $7,917, of which $5,917 remained outstanding (see Exhibit I). Conversely, Defendant claimed that a payment of $2,000 was agreed upon in January 2021, an amount which Defendant had already paid to Plaintiff, and that there was no outstanding payment to be made to Plaintiff.
Yet it was implied in the Email Communications that there was outstanding payment to be made to Plaintiff. An email from Defendant to Plaintiff on April 23, 2021 at 2:59PM stated that "I [could] continue to pay you every two weeks as we agreed earlier or we [could] settle the balance as I proposed [in the Settlement Agreement] last night" (see Exhibit I). Such communications by Defendant revealed the existence of a payment plan, which was separate from, and in addition to the payment of $2,000 previously paid by Defendant to Plaintiff (id.). This was corroborated by an email from Defendant to Plaintiff on April 23, 2021 at 9:35PM, which similarly revisited the aforesaid payment plan by stating "as I said before, I [would] continue to pay you every two weeks as we agree[d]" (id.). Here, Defendant's acknowledgement of the existence of a payment plan in addition to his payment of $2,000 is in direct conflict with his own testimony, where he denied the existence of any outstanding payment to Plaintiff.
However, the exact amount to be paid in accordance with such payment plan was not ascertainable in the Email Communications. While factual controversies have been raised that support Plaintiff's contentions as to outstanding payment, there was no evidence that explicitly stated the specific terms of the initial oral agreement itself other than Plaintiff's own emails stating that Plaintiff was promised to be paid $1,000 on a weekly basis. An email sent by Defendant to Plaintiff on April 23, 2021 at 2:18PM stated "[w]hy [were] you doing this? Why [did] you keep changing every step of the way? I [was] a little surprised because I [had] never seen this before" (id.). Defendant's email was in response to Plaintiff's earlier email on April 23, 2021 at 1:52PM, which stated that additional terms needed to be included in the Settlement [*4]Agreement to reflect payment of outstanding fees in the amount of $5,917, payment of Plaintiff's credit card interest in the amount of $125.73 and payment of a portion of Defendant's writing grant in order for Plaintiff to accept the Settlement Agreement proposed by Defendant (id.). In an email sent by Defendant to Plaintiff on April 23, 2021 at 9:35PM, Defendant stated "[y]ou [kept] increasing payment amount [that] were never discussed" (id.). This was further corroborated by an email sent by Defendant to Plaintiff on April 23, 2021 at 10:52PM, where he stated "the reason we agreed to stretch the payment over [eight] months was because I was surprised and felt you raised the editing price in the middle of the editing after we had initially agreed to a certain price. You argued that you had said $1,000 per week, which I did not hear from you and I [had] a witness. I felt trapped" (id.). This suggested that there was a disagreement as to the amount of payment to be received by Plaintiff for Plaintiff's services, which was not resolved. The Court can only enforce "an oral agreement as long as the terms are clear and definite and the conduct of the parties evinces mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms" (see Matter of Express Indus. & Term. Corp. v New York State DOT 93 NY2d 584, 589, 715 N.E.2d 1050, 693 N.Y.S.2d 857 [1999]; Carlsen v Rockefeller Ctr. N., Inc., 74 AD3d 608, 903 NYS2d 52 [1st Dept 2010], Kramer v Greene, 142 AD3d 438, 439, 36 NYS3d 448 [1st Dept 2016]). There is a lack of evidence for what material terms were agreed upon in both the initial alleged agreement of January 2021 and what terms were agreed upon in its subsequent modification leading to uncertainty and discrepancy as to monetary compensation. In short, there is conclusive evidence of material disagreements regarding the payment terms of the original oral agreement sufficient to negate the initial intent to be bound.
Similarly, there is lack of evidence to suggest that it was agreed between the parties in January 2021 for Defendant to pay Plaintiff a portion of Defendant's writing grant contingent upon Defendant receiving one in the future other than what was stated in Plaintiff's own emails. In an email to Defendant on April 24, 2021 at 2:14PM, Plaintiff alleged that Plaintiff was promised to receive a "payment of a 'portion' of any writing grant that [Defendant] happen[ed] to receive for a future book based on [Defendant's] thesis, a payment that [Defendant] promised (in mid January) to make to [Plaintiff] in the spirit of equity" (see Exhibit I). This suggested that in the alleged original oral agreement, there was a lack of discussion on what exact "portion" of the writing grant was to be received by Plaintiff. The "minimum contingent amount of $3,602" proposed by Plaintiff in Plaintiff's email on April 23, 2021 at 1:52PM constituted a new counteroffer, which was subsequently rejected by Defendant (id.). Even if the Court were to entertain that there was indeed an enforceable agreement in January 2021 to split the writing grant, without clear evidence of there being an "objective meeting of the minds" with respect to "all material terms", the alleged oral agreement is unenforceable (see Matter of Express Indus. & Term. Corp. v New York State DOT 93 NY2d 584, 589, 715 N.E.2d 1050, 693 N.Y.S.2d 857 [1999]). For it to be enforceable, it cannot leave any material term for future negotiation, as it merely becomes an agreement to agree (see Mars. of the Future, Inc. v New York, 87 AD2d 270, 277, 450 N.Y.S.2d 839 [1st Dept 1982], Tenber Assoc. v Bloomberg L.P., 51 AD3d 573, 574, 859 N.Y.S. 2d 61 [1st Dept 2008]). A mere future intent to share an unspecified portion of a writing grant, contingent upon Defendant obtaining one is unenforceable.
Here, Plaintiff has failed to establish that an enforceable oral contract was entered into in January 2021 for Plaintiff to be paid $1,000 per week for the duration of the editing services performed and a portion of any writing grant that Defendant were to receive in the unforeseeable [*5]future.
Likewise, there was lack of evidence to suggest that Defendant had made an additional promise in February 2021 to pay Plaintiff's credit card interest of $125.73 as compensation for Defendant's delay in paying Plaintiff's fees, except as claimed in Plaintiff's own emails sent on April 23, 2021 at 1:52PM, 4:27PM, 6:53PM, 10:17PM, and on April 24, 2021 at 2:14PM to Defendant (see Exhibit I). While it is clear from examining the evidence that there were indeed discussions regarding the payment of $125.73 during Settlement Agreement negotiations, the settlement proposal offered by Defendant was ultimately rejected by Plaintiff, and the Email Communications were uncertain as to whether there indeed was an oral contract entered into in February 2021 for Defendant to pay Plaintiff's credit card interest.
B. Quasi-contractual Remedies
While New York City Civil Court is a court of limited jurisdiction and has only equity powers specifically conferred upon it by statute (see NY Constitution Art. VI, § 15; CCA, Art 2), this Court sees it appropriate in the instant action, to examine quasi-contractual remedies in the interest of "substantial justice" (see UCCA 1804). "Where there is a bona fide dispute as to the existence of a contract or the application of a contract in the dispute in issue, a [plaintiff] may proceed upon a theory of quasi contract as well as breach of contract and will not be required to elect his or her remedies" (see Goldman v Simon Prop. Group, Inc., 58 AD3d 208, 220, 869 NYS2d 125 [2nd Dept. 2008]).
1. Quantum Meruit
Generally, under the doctrine of quantum meruit, "the performance and acceptance of services gives rise to the inference of an implied contract to pay for the reasonable value of such services" (see Moors v Hall, 143 AD2d 336, 338 [2nd Dept. 1988]). The plaintiff must establish "(1) the performance of services in good faith, (2) the acceptance of services by the person to whom they are rendered, (3) expectation of compensation therefor, and (4) reasonable value of the services" (see Moses v Savedoff, 96 AD3d 466, 471, 947 NYS2d 419 [1st Dept 2012]). Here, Plaintiff provided editing services in good faith to Defendant. Defendant accepted Plaintiff's service and paid Plaintiff $2,000 upon Plaintiff's completion of Plaintiff's editing services.
With respect to the third element, although Plaintiff failed to establish the exact amount agreed upon under the initial alleged oral contract, the record indicated that it was undisputed that Plaintiff was to receive monetary compensation for the editing services performed.
Therefore, it remains for the Court to decide what is the "reasonable value". Here, Plaintiff failed to offer evidence or testimony as to the reasonable value of the editing service performed. Any details as to Plaintiff's editing experience, reputation, and ability as well as any evidence pointing to prevailing wages for similar doctorate thesis editing work such as a testimony or expert opinion about the industry standard or values for comparable editing services were not offered during the trial. Thus, the Court is unable to decide the reasonable value of the editing service, the fourth element of a quantum meruit cause of action.
2. Unjust enrichment
To prevail on a unjust enrichment cause of action, the Plaintiff must demonstrate "that (1) [Defendant] was enriched, (2) at [Plaintiff's] expense, and (3) that 'it is against equity and good conscience to permit [Defendant] to retain what is sought to be recovered'" (see Mandarin [*6]Trading Ltd. v Wildenstein, 16 NY3d 173, 182, 944 NE2d 1104, 919 NYS2d 465 [2011], Georgia Malone & Co., Inc, v Rieder, 19 NY3d 511, 516, 973 N.E.2d 743, 950 N.Y.S.2d 333 [2012]). Here, Defendant benefited from Plaintiff's editing services as Defendant received a version of Defendant's doctoral thesis, improved by Plaintiff's editorial corrections, which Defendant was later able to submit as part of Defendant's PhD program. Also, the editing work performed was at Plaintiff's expense because were it not for Defendant's promise to provide monetary compensation for Plaintiff's editing services, Plaintiff would not have delivered the editing services in the first place. Plaintiff relied on such a promise to spend a period of little less than eight weeks on editing Defendant's thesis. Arguably, the Email Communications provided an insight into how the editing work was to the Plaintiff's detriment. In an email sent by Plaintiff to Defendant on April 23, 2021 at 6:53PM, Plaintiff stated that "in my case I worked for you double time, 78 hours a week, at the age of 68. It was exceedingly difficult. I barely exercised a few times in those 8 weeks of work. Except on my one day off a week, I only left the house for a walk 3 or 4 times in those 8 weeks" (see Exhibit I). A similar sentiment was reflected in Plaintiff's email sent on April 26, 2021 at 12:14PM that Plaintiff "at age 68 . . . devote[d] [himself] to the editing 13 hours a day, 6 days a week, in state of hypervigilance and high level exhaustion" (id.).
In reference to the third element, the fact that Plaintiff may have been compensated, in part, by the payment of $2,000, is not dispositive on the question of whether he received adequate compensation for his services and does not bar the claim (see Foster v Koyner, 44 AD3d 23, 29 [1st Dept. 2007]). This Court finds that it is inferred from the Email Communications that Plaintiff is entitled to further payment. In fact, the Settlement Agreement proposed by Defendant himself stated that the agreement was in reference to "$5,917 owed for editing services performed between January 15 and March 2021 by [Plaintiff]" (see Exhibit A). Defendant also made other similar offers to pay the amount as evidenced by the email correspondence. Based on the evidence at hand, it appeared that an "equitable obligation" has been created by Defendant to compensate Plaintiff for Plaintiff's editing services (see Corsello v. Verizon New York, Inc., 18 NY3d 777, 790, 967 N.E.2d 1177, 944 N.Y.S.2d 732 [2012]). While Defendant alleged that his offer to pay $5,917 was merely an attempt to prevent Plaintiff from harassing Defendant, and not necessarily a reflection of the compensation for services rendered, there was a lack of evidence to suggest that Plaintiff was harassing Defendant.
Thus, based upon the foregoing, this Court finds that it would be appropriate to compensate Plaintiff in the amount of $5,917 as suggested in Defendant's Settlement Agreement in the interest of "equity and good conscience".
C. Cause of Action for Violation of FIFA
1. Payment Violations
Made effective on May 15, 2017, FIFA aims "to protect freelance workers who were denied compensation" (see Turner v Sheppard Grain Enters., LLC, 68 Misc 3d 385, b387, 127 N.Y.S.3d 260 [Sup Ct, NY County 2020], citing Caitlin M. Baranowski, Freelance Isn't Free: The High Cost of New York City's Freelance Isn't Free Act on Hiring Parties, 12 Brooklyn J Corp Fin & Com L 439, 443 [2018]; see also Chen v Romona Keveza Collection LLC, 208 AD3d 152, 155, 173 N.Y.S.3d 201 [2022]), specifically regarding freelance workers' rights to a written contract upon request, timely and full payment, and protection from retaliation (see NYC [*7]Administrative Code 20-928[a]; 20-929; 20-930). FIFA codifies certain protections regarding contracts between freelance workers and hiring parties if they have "a value of $800 or more" (NYC Administrative Code 20-928).
FIFA defines "a freelance worker" as "any natural person or any organization composed of no more than one natural person, whether or not incorporated or employing a trade name, that is hired or retained as an independent contractor by a hiring party to provide services in exchange for compensation" (NYC Administrative Code 20-927). The term "hiring party" is "any person who retains a freelance worker to provide any service," other than certain governmental bodies, as enumerated by the statute (id.). If a freelance worker is successful in establishing that the hiring party has failed to pay the amount agreed to under the contract (1) on the payment due date under the contract; or (2) within 30 days after the freelance worker completes work on the contract (NYC Administrative Code 20-929), the freelance worker is "entitled to an award for double damages, injunctive relief and other such remedies as may be appropriate" (NYC Administrative Code 20-933[b][3]).
Although Plaintiff falls within FIFA's definition of a freelance worker, and Defendant, in turn, qualifies as a hiring party under FIFA, Plaintiff here has failed to establish the existence of an enforceable oral contract between the parties. As a result, Plaintiff is not entitled to protections afforded by FIFA, neither to the statutory damages promulgated therein. Therefore, Plaintiff is not entitled to double damages pursuant to NYC Administrative Code 20-933[b][3].
2. Failure to provide a written contract
Pursuant to NYC Administrative Code 20-928, a written contract between a hiring party and a freelance worker is required when "the contract between them has a value of $800 or more, either by itself of when aggregated with all contracts for services between the same hiring party and freelance worker during the immediately preceding 120 days, the contract shall be reduced to writing" (NYC Administrative Code 20-928). NYC Administrative Code 20-933[a][5] requires that a freelance worker "who solely alleges a violation of [NYC Administrative Code 20-928] must prove that such [freelance worker] requested a written contract before the contracted work began".
Under NYC Administrative Code 20-933[b][2], if a sole violation of section 20-928 is established, a freelance worker is to be awarded statutory damages of $250. If a freelance worker prevails on a claim alleging a violation of section 20-928 and on one or more claims, the freelance worker is to be awarded damages equal to the value of the contract.
Here, Plaintiff has failed to establish the existence of an enforceable contract and provided no allegations or evidence that he requested the written contract from Defendant before the contracted work began as required by NYC Administrative Code 20-933[a][5]. As such Plaintiff is not entitled to damages under FIFA pursuant to NYC Administrative Code 20-933[b][2].

 III. Order
Accordingly, it is
ORDERED that a money judgment in the amount of $5,917 is awarded to Plaintiff with interest from November 14, 2024.
This constitutes the DECISION and ORDER of this Court.
Dated: December 10, 2024
County of New York
Honorable Wendy Changyong Li, J.C.C.